**Julio MENDEZ a/k/a Julio Mendez Rodriguez, et al., Plaintiffs, Appellants,**

**v.**

**BANCO POPULAR DE PUERTO RICO, Defendant, Appellee.**

**No. 89–2077.**

United States Court of Appeals, First Circuit.

Heard March 6, 1990.

Decided April 6, 1990.

---

A. Santiago–Villalonga, with whom Nachman & Fernandez–Sein, Santurce, P.R., was on brief for plaintiffs, appellants.

Jay A. Garcia Gregory, with whom Ricardo F. Casellas, Fiddler, Gonzalez & Rodriguez, San Juan, P.R., Caparros, Estadez & Catala and Frank Catala Morales, Bayamon, P.R., were on brief for defendant, appellee.

Before BREYER and SELYA, Circuit Judges, and RE,* Judge.

SELYA, Circuit Judge.

Plaintiff Julio Mendez Rodriguez (Mendez) sued his former employer, Banco Popular de Puerto Rico (the Bank), alleging that his discharge offended both Title VII, 42 U.S.C. §§ 2000e through 2000e–17, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634.[1] The Bank

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

1. Because the partnership's claim is derivative, we refer to Mendez as if he were the sole plaintiff. Our decision, of course, binds all plaintiffs.

denied the allegations. After about a year, defendant moved for summary judgment. As this brings us to the meat of the matter, we limn the pertinent chronology:

1. **August 7, 1989.** Defendant filed its Rule 56 motion and supporting documentation. A reply was due within 10 days. D.P.R.L.R. 311.9.

2. **August 17, 1989.** Plaintiff moved for a 30–day extension running "from the date of this motion," telling the district court "it would be impossible to file a responsive opposition within ten days" because of counsel's "many calendar commitments."

3. **August 21, 1989.** The district court allowed the extension. Since September 16 was a Saturday, Mendez's opposition was due on September 18. *See* Fed.R.Civ.P. 6(a) (in computing intervals greater than 10 days, last day of period, if "a Saturday, a Sunday, or a legal holiday," not includible).

4. **September 11, 1989.** Plaintiff, again citing counsel's involvement in an ongoing trial, moved for another 10–day extension. If granted, this extension would have lasted until October 2. *See* Fed.R.Civ.P. 6(a) (when filing period is less than 11 days, "intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation").

5. **September 13, 1989.** The district court denied the second extension request.

6. **September 18, 1989.** The deadline for filing the opposition passed, unhonored.

7. **September 26, 1989.** Plaintiff filed a third motion for extension, seeking a further 30 days and pointing out that Hurricane Hugo had struck Puerto Rico on September 18. Plaintiff's lead attorney attributed his need for more time to "the heavy load of work accumulated ... on account of" his trial schedule and "the time lost after the hurricane."

8. **September 29, 1989.** The district court, referring to its previous order, *see supra* No. 5, denied the third extension motion.

9. **October 17, 1989.** Plaintiff filed his long-overdue opposition to defendant's Rule 56 motion.

10. **October 24, 1989.** The district court, in a 6–page rescript, allowed the summary judgment motion. In doing so, the court considered only the moving papers and supporting materials. In a footnote, the judge explained:

> After the drafting of this opinion, plaintiffs filed an opposition to summary judgment. As it is pointed out in our opinion, plaintiffs' requests for a second and a third extension of time were denied. We perceive no valid reason why plaintiffs' opposition should be admitted.

### Failure to Grant Further Enlargements

■ Given this series of events, we need not tarry. Requests to extend filing deadlines come within Fed.R.Civ.P. 6(b).[2] And the district court, charged with administration of a busy docket and a burgeoning case load, must be ceded considerable discretion in the rule's application.

■ Here, appellant sought an initial extension of time, telling the court, in effect, that he needed an extra 30 days to respond to defendant's motion. The court, which gave appellant precisely the amount of time he requested, was entitled to rely on the implication that 30 days was enough. Such an assumption seems especially fitting since, by his own admission, Mendez's attorney was aware of his "many calendar commitments" when he asked for the extra leeway. *See supra* No. 2. The next extension motion was grounded in essentially the same facts. We cannot fault the district court, having originally taken plaintiff's counsel at his word, for deciding, the sec-

---

**2.** In relevant part, the rule stipulates:
> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; ...

Fed.R.Civ.P. 6(b).

ond time around, that there was no good cause for an enlargement. *Cf., e.g., Baker v. Raulie,* 879 F.2d 1396, 1399 (6th Cir. 1989) (fact that attorney was involved in another trial constituted insufficient predicate for claim of excusable neglect); *McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1387 (11th Cir.1981) (similar), *cert. denied,* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982); *Graham v. Pennsylvania R.R.,* 342 F.2d 914, 915 (D.C.Cir.1964) (similar), *cert. denied,* 381 U.S. 904, 85 S.Ct. 1446, 14 L.Ed.2d 286 (1965). By the same token, the lawyer had no valid basis to claim he was surprised. As we said quite pointedly on an earlier occasion, "[m]ost attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences." *Pinero Schroeder v. Federal Nat'l Mortgage Ass'n,* 574 F.2d 1117, 1118 (1st Cir.1978) (per curiam).[3]

■ Nor do we believe that the trial court abused its wide discretion in failing to grant the third extension. While we do not minimize the havoc wreaked by Hurricane Hugo, it seems a fair inference on this record that, without the storm's emergence, appellant would not have made a timely submission. In any event, the linchpin of Mendez's beseechment that the weather merited the third extension is the Puerto Rico Supreme Court's decision in *Asociacion de Doctores v. Morales,* 89 JTS 77 (1989). There, in the hurricane's wake, the court authorized exclusion of the period Sept. 18/Oct. 2 from the computation of court deadlines. The short answer to appellant's reliance on this argument is that the *Morales* order had no application to the federal district court. The slightly longer (but ultimately identical) answer is that, even were we to look to *Morales* as a valid analogy, appellant's opposition would have been due on October 3. It was not docketed until October 17, far past the outermost limit of the *Morales* grace period. By any standard, Mendez's filing was unacceptably late.

Rules are rules—and the parties must play by them. In the final analysis, the judicial process depends heavily on the judge's credibility. To ensure such credibility, a district judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines. If he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance. Moreover, appellate courts cannot too readily agree to meddle in such case-management decisions lest the trial court's authority be undermined and the system sputter. *Cf. Higuera v. Pueblo Int'l, Inc.,* 585 F.2d 555, 557 (1st Cir.1978) ("There comes a point when the question arises who is running the court—counsel, or the judge. To this there can be but one answer."). In the absence of a manifest abuse of discretion, then, we will not interfere with a district court's reasoned refusal to grant incremental enlargements of time. We discern no such abuse in the present case.

## The Grant of Summary Judgment

■ The mere fact that plaintiff failed to file a timely opposition does not mean that defendant's Rule 56 motion should be granted. *See Jaroma v. Massey,* 873 F.2d 17, 19–20 (1st Cir.1989) (per curiam); *cf. Rabal Pinto v. Universidad de Puerto Rico,* 895 F.2d 18, 19 (1st Cir.1990) (same; Rule 12(b)(6) motion). Whether or not opposed, summary judgment can only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also* Fed.R. Civ.P. 56(e) (if adverse party fails to respond, "summary judgment, *if appropriate,* shall be entered") (emphasis supplied). Be that as it may, the district court was not obliged to consider appellant's untimely opposition in applying the Rule 56 standard.

---

**3.** Although the principle clearly applies to sole practitioners, *see, e.g., McLaughlin,* 662 F.2d at 1387, in this case the press-of-business excuse seems particularly lame as plaintiff was represented by a multi-lawyer firm.

*See Davidson v. Keenan,* 740 F.2d 129, 132 (2d Cir.1984); *Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1519 (9th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984); *Farina v. Mission Investment Trust,* 615 F.2d 1068, 1076 (5th Cir.1980); *cf. Rabal Pinto,* 895 F.2d at 19 ("The court has no obligation to play nursemaid to indifferent parties."). Were the rule otherwise, enlargements of time would be an idle ceremony, and the lawyers, not the judge, would be running the docket.

■ We have examined the pertinent portions of the record with care. The district court wrote a considered opinion explaining in some detail why defendant's proffer "positively established" the Bank's entitlement to *brevis* disposition. We can add little to the court's rationale. On the basis of the timely submissions, no genuine issue of material fact remained.[4]

### Conclusion

We need go no further. For the reasons described above, we rule that while the district court, had it seen fit, might have granted relief, the court acted within the sphere of its discretion in refusing the second and third extensions; that the court properly declined to consider plaintiff's belated submission of an opposition to the Rule 56 motion; and that summary judgment was appropriately entered. We do not agree with defendant, however, that this appeal was frivolous and we deny its request that we order appellant, or his counsel, to pay sanctions, double costs, and attorneys' fees.

*Affirmed.*

---

**4.** Appellant seemingly concedes as much. His brief does not argue that there were any shortcomings in defendant's presentation, viewed alone. Rather, he tells us that: "All [the controverted] facts appear in the statement made by plaintiff [in his belated opposition]." Appellant's Brief at 8. That opposition, of course, was not validly before the court.