**Bobby Rydell MARSHALL, Plaintiff,**

**v.**

**Daryl F. GATES, et al., Defendants.**

**No. CV 91–4860–ER (Ex).**

United States District Court,
C.D. California.

Jan. 15, 1993.

Stephen Yagman, Yagman & Yagman, Venice, CA, for plaintiff.

James Hahn, Los Angeles City Atty., Les Brown, Timothy A. Hogan, Frederick Merkin, Los Angeles, CA, for defendants.

## MEMORANDUM ORDER GRANTING JUDGMENT UNDER FRCP 56

RAFEEDIE, District Judge.

This case came before the Court for oral argument on a summary judgment motion on September 21, 1992, the Honorable Edward Rafeedie, United States District Court Judge presiding. Stephen Yagman, Yagman and Yagman, appearing for plaintiff, Bobby Rydell Marshall. James Hahn, Frederick Merkin, Leslie Brown, Timothy Hogan, Los Angeles City Attorney's Office, appearing for defendants Daryl Gates, et al. The Court having announced its decision in open Court on September 21, 1992, issues its formal order, findings, and conclusions.

## INTRODUCTION

This was an action brought by Bobby Rydell Marshall under 42 U.S.C. Sections 1981, 1982, 1983, 1985, and 1986, against defendants Daryl Gates (Chief Gates), Joseph D. Germain, (Commander Germain) Richard E. Kimball (Captain Kimball), and One Hundred Unknown Named Employees or Officials of City of Los Angeles. Plaintiff alleges retaliatory discrimination in employee deployment and personnel scheduling decisions within the Los Angeles Police Department (LAPD) in response to plaintiff's appearance before the Christopher Commission.[1]

Plaintiff alleges that he was both removed from the workshift of his choice and in another incident, denied a promotion for which he competed with ten other officers.

Defendants filed a timely and properly noticed motion for summary judgment based on qualified immunity grounds. However, plaintiff knowingly failed to file any timely opposition papers to the summary judgment motion, in direct violation of the Local Rules of the Central District of California as discussed below.

■ After considering plaintiff's reasons for the untimely filing, the Court finds that plaintiff's unexplained failure to request additional time to file his opposition and his proffered explanations for the late filing do not constitute inadvertence or excusable neglect. The Court finds no basis to support excusable neglect for plaintiff's delay in submitting opposing papers both to the Court and to defendants. Further, due to plaintiff's disregard of numerous Local Rules, the Court does not consider the untimely filed documents in reaching the merits of the summary judgment motion. Based on the existing record and a finding on the merits of defendant's summary judgment motion, the Court concludes that the qualified immunity doctrine shields the defendants from liability as a matter of law.

Plaintiff's Untimely Filing of Opposition Papers

On August 27, 1992, defendants filed a properly noticed motion for summary judgment based on qualified immunity grounds.[2] The motion hearing date for oral argument and adjudication by the Court was scheduled for Monday, September 21, 1992.

Plaintiff's counsel, Stephen Yagman, filed untimely opposition papers to the summary judgment motion. The opposition papers, pursuant to Local Rules, were due fourteen days before the motion hearing date, September 8, 1992, but were not filed with the Court until Thursday September 17 and Friday September 18, 1992, only one working day before the calendared hearing date.

As an immediate result of counsel's noncompliance with the Local Rules, defendants' counsel did not receive or view any of plaintiff's opposition materials by the motion hearing day, September 21, 1992. Defendants apparently were not even aware that plaintiff was intending to oppose the motion.

Curiously, plaintiff, notwithstanding the immediacy of the scheduled motion hearing date, chose to serve the opposing papers on

---

1. The Christopher Commission was organized to investigate the Los Angeles Police Department following the Rodney King incident.

2. Plaintiff filed the complaint precipitating this action on September 10, 1991.

defense counsel by mail. Thus, defendants were unfairly precluded from considering plaintiff's opposition papers and were prevented from filing a proper reply with the Court.

Due to plaintiff's untimely filing of opposition papers and the actual prejudice suffered by defendants, the Court strikes the untimely documents and disregards them. The Court further finds that plaintiff has knowingly disregarded numerous provisions of the Local Rules of the Central District of California pertaining to the filing requirements of opposition papers.

This finding by the Court is practical, especially in light of the need for qualified immunity decisions to occur at the earliest possible stages of the litigation process, presumably at summary judgment stage if possible. *Hunter v. Bryant,* —— U.S. ——, ——, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

## I. UNTIMELY FILING NOT EXCUSABLE

Taken together, Fed.R.Civ.P. 6(b) and 56(f) generally grant the Court discretion to extend time periods for opposing parties for cause shown 1) with or without motion if a request is made before the expiration of the time period, or 2) with motion after the expiration of the time period if "excusable neglect" is shown.

Plaintiff's counsel represented to the Court that he was engaged in another trial from Tuesday, August 25, 1992 until Friday, September 14, 1992.[3] In a declaration,[4] counsel also states that his client was incarcerated in Los Angeles until Tuesday, September 15, 1992. Thus, Mr. Yagman claims that the combination of his engagement in trial and his clients incarceration made it physically impossible to prepare

and file the necessary opposing papers and declarations. The Court concludes that neither of these two excuses singularly or in combination constitute excusable neglect to justify the untimely filing.

Records indicate that defendants personally served counsel for plaintiff with the summary judgment motion on Thursday, August 27, 1992. Curiously, the Court notes that the trial in which Mr. Yagman was engaged from August 25th until September 11, 1992, upon which he relies to excuse his untimely filing, took place within this very Federal Courthouse. Nevertheless, Mr. Yagman failed to inform the Court or the defendants of the "circumstances" upon which he relies to excuse his dilatoriness.[5] Courts have pointedly stated that an attorney's involvement in another trial is insufficient predicate for a claim of excusable neglect. *Baker v. Raulie,* 879 F.2d 1396, 1399 (6th Cir.1989) ("being busy" and involved in another trial not excusable neglect); *Pinero Schroeder v. Federal Nat'l Mortgage Ass'n,* 574 F.2d 1117, 1118 (1st Cir.1978) (per curiam) ("most attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of the matters they are handling or suffer the consequences"); *Graham v. Pennsylvania R.R.,* 342 F.2d 914, 915 (D.C.Cir.1964) (same findings), *cert. denied,* 381 U.S. 904, 85 S.Ct. 1446, 14 L.Ed.2d 286 (1965).

Trial attorneys are generally expected to be engaged with other matters in other courts. Counsel's claim that he was "physically" unable to file his papers is meritless. The Court does not view this excuse as sufficient to warrant a finding of excusable neglect regarding the reasonable scheduling deadlines imposed by the Local Rules and the Court. Instead of portraying a

3. Mr. Yagman's declaration incorrectly represented that he was engaged in trial until Friday the 14th of September. Upon later verification with the Court Clerk it was determined that Mr. Yagman was in fact in trial from Tuesday, August 25, 1992, until Friday, however, that Friday was September 11, 1992 and not the 14th.

4. For purposes of deciding the summary judgment motion, this declaration was stricken be-

cause it contained legal argumentation and case law (Local Rule 7.5.3) and was untimely filed with the Court. This declaration was only examined by the Court to determine whether excusable neglect was indicated.

5. Perhaps counsel should have applied under Fed.R.Civ.P. 56(f) for a continuance if these difficulties had actually existed.

picture of diligence, these facts suggest a pattern of calculated delay.[6]

Next, the Court turns to Mr. Yagman's contention that he was unable to contact his client to prepare a timely opposition because of his engagement in trial and the incarceration of his client. Counsel claims that since his client was in jail since March of 1992, he was "physically unable to go to the jail or to telephone [his client] there." These arguments are also meritless. As stated above, engagement in another trial is not excusable neglect.

Further, counsel has not stated how his client's incarceration prevented him from filing opposing documents.[7] Plaintiff's complaint was filed on September 10, 1991. The Court assumes that counsel would have interviewed his client prior to September 1991, in order to prepare a well-founded complaint pursuant to Rule 11 of the Federal Rules of Civil Procedure.[8] Counsel also had approximately six months to visit his client to retrieve factual evidence prior to the onset of trial. Finally, the discovery cutoff date had already expired on June 30, 1992. Therefore, the Court is of the view that the necessary discovery to support plaintiff's claims should have been conducted even prior to Mr. Yagman being served with defendants' summary judgment motion on August 27, 1992. Accordingly, the Court finds that Mr. Yagman had ample opportunity to timely file the necessary opposing papers.

■ Again, the Court reiterates that counsel should have informed the Court and the defendants that additional time was necessary to file any opposing papers.[9]

Additional time could have been requested in the three week period between the August 27, 1992 filing and the September 21, 1992 hearing. The Court is under no obligation to "follow up" with parties who fail to timely submit opposing papers. Moreover, a Court need not make the case of an inactive party. Indeed, "if opposing lawyers sit on their haunches ... judges may let the adversary system take its course." *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir.1990).

The Court agrees with and adopts the Fifth Circuit's statement:

"[D]elays are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to reasonable deadlines is critical to restoring integrity in court proceedings."

*Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir.1990).

A) *Local Rule Requirements for Filing an Opposition*

■ Local Rules are the "laws of the United States." *United States v. Hvass*, 355 U.S. 570, 575–76, 78 S.Ct. 501, 504–05, 2 L.Ed.2d 496 (1958). A statutory mechanism, Federal Rule of Civil Procedure 83, exists for the district courts' promulgation of local rules. Attorneys practicing within the Central District of California have an obligation to observe these Rules.[10]

---

6. Plaintiff even chose to serve the untimely documents upon opposing counsel via mail.

7. Indeed, counsel has presented no evidence whatsoever to this Court that he was unable to contact his client or to locate his client. The Court further notes that as counsel's client was incarcerated, the client's whereabouts would have been readily known.

8. Rule 11 of the Federal Rules of Civil Procedure provides:

Every pleading, motion ... of a party represented by an attorney shall be signed by at least one attorney of record.... The signature of an attorney ... constitutes a certificate by the signer that the signer has read the pleading, motion ... [and] that to the *best of the signer's knowledge*, information, and belief *formed after reasonable inquiry it is well grounded in fact and is warranted by existing law*. (emphasis added).

9. In addition, the parties filed a status report pursuant to Local Rule 6 on February 20, 1992 which indicated that a summary judgment motion by defendants was to be filed.

10. The Court finds it unnecessary to engage in a lengthy discussion regarding the enforcement of the Local Rules. Local rules for governing a court's practice are congressionally acceptable

The Local Rules of the Central District of California provide the time limits under which oppositions to motions must be filed. Local Rule 7 et seq.[11] Specifically, this Rule and its subsections provide the time limits [12] within which oppositions must be filed, require certain documents to be filed with the opposition,[13] and outline what substantive material can be included in those documents when filed.[14] Attorneys appearing before courts within the Central District are instructed by the Local Rules that untimely filings may, *inter alia,* be disregarded by the Court, provide consent to the granting or denial of the motion, and may permit the court to assume that facts presented by a moving party on a summary judgment motion exist without controversy.

Naturally, practical purposes underlie the enactment of these particular Local Rules. The importance of assuring that a non-moving party will have an adequate opportunity to respond to a motion is a paramount consideration and must not be trivialized.

These reasonable Rules also guarantee the Court itself adequate time to properly consider and rule upon motions, oppositions, and replies, before the scheduled hearing date. The brunt of a district court's practice is one of law and motion. District courts have the responsibility of adjudicating literally hundreds of motions each year. These are often dispositive and contain many complex issues. Local Rules protect a trial judge's control over the court's docket and ensure the proper consideration of matters under enormous time constraints.[15] In the instant case, each Local Rule found to have been violated will be discussed by the Court in turn.

1) Oppositions must be timely filed

■ *Local Rule 7.6* contains the requirements for filing oppositions:

"Each opposing party *shall, not later than fourteen (14) days before the date designated for the hearing of the motion,* serve upon all other parties and file with the Clerk either (a) the evidence upon which the opposing party will rely in opposition to the motion *and* a brief but complete memorandum which shall contain a statement of all the reasons in opposition thereto and the points and authorities upon which the opposing party will rely, or (b) a written statement that he will not oppose the motion. Evidence presented in all opposing papers shall comply with the requirements of Local Rules 7.5.2, 7.5.3, and 7.5.4." (emphasis added).

Two requirements are evident. First, opposing papers must be filed 14 days prior to the motion hearing date. This requirement is in force unless otherwise ordered or excused by the Court. Second, the opposing papers must contain a memorandum of reasons and an accompanying points and authorities in opposition.

. Plaintiff was no less than nine calendar days late in submitting his opposing material to the Court. The Court had designated September 21, 1992 as the hearing date for defendants' summary judgment motion. Under Local Rule 7.6, plaintiff was required to file his opposition papers with the Court by September 8, 1992.[16] However,

---

according to Rule 83 of the Federal Rules of Civil Procedure. In particular, district court's have discretion to adopt local rules that "are necessary to carry out the conduct of its business," so long as the local rule is "not inconsistent" with a Federal Rule of Civil Procedure. *Frazier v. Heebe,* 482 U.S. 641, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987); F.R.Civ.P. 83; 28 U.S.C. Sections 1654, 2071.

**11.** *Local Rule 7.1* states "the provisions of this rule *shall* apply to motions." (emphasis added).

**12.** Local Rule 7.6.

**13.** Local Rule 7.14.2.

**14.** Local Rule 7.6, 7.5.2, 7.5.3 and 7.5.4.

**15.** The problems of congestion and delay in the federal court system at both the district and appellate levels are considered indisputable. *See e.g.,* Reinhardt, *Too Few Judges, Too Many Cases,* ABA Journal, January 1993, at 52–53.

**16.** The opposition was due in this Court on September 8, 1992, fourteen days before the hearing, which was scheduled for September 21, 1992. In fact, the actual due date was September 7th, but due to a legal holiday counsel was given an extra day to file his opposition.

plaintiff's opposition papers were not filed until September 17 and 18, 1992, the Thursday and Friday prior to the Monday hearing date, far past the fourteen day period mandated by the Rule.

Even more noteworthy, however, was the fact opposing counsel had not even viewed or received any of plaintiff's opposing papers by the hearing date. As a result, plaintiff positioned himself to argue against defendants' summary judgment motion while the defendants were left wholly unprepared to argue against plaintiff's position. In addition, the Court had not had an opportunity to research plaintiff's legal position.

The right to reply is ensured by *Local Rule 7.7*:

> If the moving party so desires, he may not later than the seventh calendar date ... before the date designated for the hearing of the motion, serve and file reply memorandum, declarations or other evidence.

By denying defendants the opportunity to view plaintiff's opposing papers until minutes prior to the hearing,[17] defendants were prevented from responding to or rebutting plaintiff's contentions.[18]

Announced deadlines must be adhered to if the Court is to function effectively and efficiently. Respect for the judicial process is certainly a casualty of calculated delay. The Court acknowledges the First Circuit's wisdom:

> Rules are rules—and the parties must play by them. In the final analysis, the

judicial system depends heavily on the judge's credibility. To ensure such credibility, a district judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines. If he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance.

*Mendez v. Banco Popular De Puerto Rico,* 900 F.2d 4, 7 (1st Cir.1990).[19]

The Court finds that due to the violation of Local Rule 7.6, the unfair prejudice to defendants, the tardiness with which the papers were submitted, and the inconvenience to the Court, plaintiff's untimely filed opposing papers will not be considered in determining the merits of the summary judgment motion.

### 2) Other provisions

Additionally, the Court finds that Local Rules 7.9 and 7.5 apply. These provisions also express that the Court need not consider untimely filed papers.[20] Local Rule 7.9 provides:

> Papers not timely filed by a party including any memoranda or other papers required to be filed under this rule *will not be considered and may be deemed by the Court consent to the granting or denial of the motion,* as the case may be (emphasis added).

Indeed, under Local Rule 7.3.3 the Court may strike untimely documents. This rule provides:

---

**17.** On the morning of hearing, Mr. Yagman informed defendants that he had filed the opposing documents with the Court. Plaintiff allowed defendants' attorneys to briefly review his opposing papers before the hearing.

**18.** Further, notwithstanding the fact that plaintiff filed his opposing papers at least nine days late, defendants were served the opposing papers through the mail. Plaintiff's opposing papers included a proof of service which showing that plaintiff mailed defendants a copy of the opposing papers on Wednesday, September 16th. As the motion hearing date was Monday, September 21st and since Federal Rule of Civil Procedure Rule 6(e) "assumes a three day period for papers delivered through the mail", *United States v. Kasuboski,* 834 F.2d 1345, 1351 (7th

Cir.1987), plaintiff should have anticipated it was unlikely that defendants would receive the papers in time to properly prepare a response.

**19.** Although the Court in *Mendez* said that an untimely filed opposition does not mean that the summary judgment motion should necessarily be granted, the court also said "the district court was not obliged to consider appellant's untimely opposition in applying the Rule 56 standard." *Id.* Indeed, the First Circuit upheld the district court's determination that summary judgment was appropriate, although the district court refused to take the untimely filed affidavits into consideration. *Id.* at 8.

**20.** Local Rules 7.9, 7.3.3 and 7.5, discussed *infra.*

A party filing any document ... in opposition to, any motion noticed for hearing as above provided after the time for filing the same shall have expired shall be subject to the sanctions of Local Rule 27 and the F.R.Civ.P. Additionally, *the Court may strike the filing of any such late document and disregard it for all purposes* (emphasis added).

Accordingly, since the Court has deemed plaintiff's papers untimely, under Local Rule 7.9 the opposing material is not considered and plaintiff's opposition papers are disregarded to the extent of their noncompliance with the Local Rules.[21]

### 3) Plaintiff's arguments do not excuse non-compliance with the local rules

Plaintiff has proffered two main arguments designed to circumvent application of these Local Rules. First, plaintiff maintains that his opposing documents qualify as declarations under Federal Rule of Civil Procedure 56(c).[22] Rule 56(c) provides "[t]he adverse party prior to the day of hearing may serve opposing affidavits."[23]

Although the Federal Rules provide for such filings prior to the hearing day, Local Rule 7.6 proscribes the filing of opposing materials later than fourteen days prior to the hearing date.

Local Rule 7.6 also states that all evidence submitted in opposition must meet the "requirements of Local Rules 7.5.2, 7.5.3 and 7.5.4."[24] Rule 7.5.3 identifies the form and content requirements of declarations. Thus, the submission of declarations falls under the ambit of the fourteen day time requirement of Rule 7.6.[25] Further, Local Rule 7.5.3 requires that declarations "contain only factual, evidentiary matter, and conform as far as possible with the requirements of F.R.Civ.P. 56(e)." The Court has determined that plaintiff's opposing papers violate both Rule 7.6 and 7.5.3.

Plaintiff's opposing documents, presented to the Court as "affidavits", contained considerably more than opposing factual affidavit material. Specifically, the submitted documents included: (1) an "Opposition To Motion for Summary Judgment"[26]; (2)

**21.** *See also Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1519 (9th Cir. 1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984).

In *Wood,* the Ninth Circuit upheld a Nevada district court's striking of an opposing affidavit filed on the day of hearing. The court noted that excusable neglect had not been shown. Under the Nevada local rules, opposing memorandum is due 15 days after the motion has been filed. However, in the Central District of California, all opposing "evidence" is due 14 days prior to the motion hearing date.

**22.** On motion hearing day, plaintiff asserted that his opposing papers were "opposing affidavits" under Fed.R.Civ.P. 56(c) and that he was allowed to file these papers up until the day prior to hearing.

**23.** The Court notes the existence of Fed.R.Civ.P. 56(f). Fed.R.Civ.P. 56(f) is Rule 56's procedural "escape hatch", enabling parties who validly require more time to garner favorable evidence to challenge summary judgment motions. 56(f) allows the court to deny the application for the motion or to grant a continuance when a summary judgment motion is hovering and a party is unable to supply the Court with the required factual evidence to rebut the motion.

**24.** The court's analysis focuses on the latter two, Local Rules 7.5.3 and 7.5.4.

**25.** In determining if summary judgment is appropriate, the Court need not consider untimely affidavits opposing a summary judgment. *Wood,* 705 F.2d at 1519.

Further, the Ninth Circuit has specifically recognized the fact that a court, in its discretion, can disregard untimely filed opposition materials. *Ashton–Tate Corp. v. Ross,* 916 F.2d 516, 520 (9th Cir.1990). In *Ashton–Tate Corp.,* the opposing party waited until after the hearing to request an extension of time to file additional declarations in support of its opposition. The court rejected the request and disregarded the untimely filed declarations. The court's rationale was two-fold. First, the court said the burden is on the non-moving party to either oppose the motion by filing F.R.Civ.P. 56(e) declarations *before* the date of hearing or to file a request for a continuance pursuant to F.R.Civ.P. 56(f) if the declarants were unavailable. Second, the court stated that a motion made under F.R.Civ.P. 56(f) must be filed *"prior* to the summary judgment hearing." (emphasis added).

However, in the instant case, plaintiff did not file a request for a continuance to file late declarations "before the date of hearing." In fact, absolutely no effort was made to notify or to request a continuance from the Court.

**26.** This document read in its entirety:

"Pursuant to F.R.Civ.P. (West 1992) Rule 56(c), that provides that '[t]he adverse party

declarations by plaintiff and by counsel incorporated within the document entitled "Opposition to Motion for Summary Judgment"; (3) a Separate Statement of Disputed Issues of Fact; (4) Memorandum of Contentions of Fact and Law; (5) Interrogatory Answers in Further Opposition to Defendants' Motion for Summary Judgment; and (6) a copy of the Christopher Commission's Report, as an "Exhibit in Opposition to Defendants' Summary Judgment Motion."

Only one of plaintiff's submitted documents could qualify as an "opposing affidavit". The remainder of the documents do not contain solely factual, evidentiary material as required by Rule 7.5.3, and in fact, many documents contain legal argumentation and caselaw. Consequently, the remainder of plaintiff's papers violate the provisions of Local Rule 7.

Thus, whereas plaintiff alleges to have only filed opposing affidavits, untimely opposing memorandum with legal arguments have been submitted in violation of the Local Rules. Counsel may not label his opposing papers "affidavits" to circumvent the Local Rules requirements.

Since every opposing paper docketed (including plaintiff's declaration) was also untimely under Rules 7.6 and 7.9, the papers are ordered stricken and are disregarded by the Court in determining the merits of the motion.[27]

■■■■ Additionally, Mr. Yagman's argument—that Fed.R.Civ.P. 56(c) allows a

violation of several Local Rules by filing up to the day before the date of hearing—is unfounded. Local rules exist to "aid the administration of justice and contribute to the orderly conduct of the litigation." *Tatalovich v. City of Superior*, 904 F.2d 1135 (7th Cir.1990). Hence,

> it is foolhardy and improper for the attorneys for party litigants to completely ignore a court's local procedural rules that are designed to aid the administration of justice and the orderly conduct of summary judgment factfinding and then to camouflage their poor judgment through appellate attacks on these rules as inconsistent with Rule 56 of the Federal Rules of Civil Procedure.

*Id. at 1139.*[28]

A party cannot completely ignore the Local Rules and demand that the Court consider late filings.

Further, although Fed.R.Civ.P. 6(b) and 56(f) allow for an extension of time, the extension will only be given when made "after the expiration of the specified period," if "excusable neglect" is shown. As concluded above, this has not been shown.

The above finding is significant, since Local Rule 7.14.3 sets out the guidelines under which the Court will determine a summary judgment motion. Specifically, Local Rule 7.14.3 provides that the Court "will *assume* that the material facts as claimed ... are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'State-

---

[to a motion for summary] judgment prior to the day of hearing may serve opposing affidavits[,]' plaintiff, prior to the date of the hearing, submits the following *declarations* pursuant to 28 U.S.C. 1746. Plaintiff includes an explanation of the reasons these papers were not sooner submitted." (emphasis added).

**27.** Counsel's disregard for the Local Rules was also evident in his discussion with the Court's law clerk. Upon reviewing the motions for hearing, the Court's law clerk telephoned Mr. Yagman to determine if an opposition to defendants' summary judgment motion had been filed.

Mr. Yagman stated that he had not filed opposing papers but stressed that he would file "opposing affidavits" up to the day before the hearing, pursuant to Federal Rule of Civil Pro-

cedure 56(c). Counsel was reminded that the Local Rules of the Central District of California required all opposing papers to be submitted to the Court fourteen days before the hearing and that the Court would not consider untimely papers. Counsel responded that he would be filing "opposing affidavits" before the hearing date and that he was *not asking the Court to do* "anything."

**28.** This case is salient on an additional issue. In *Tatalovich*, the plaintiff's affidavits failed to comply with the court's summary judgment procedures. The district court did not consider the affidavits. Thus, as plaintiff did not present facts "necessary to establish [an exception] to the rule of government immunity," the district court's determination of summary judgment against plaintiff was upheld. *Id.* at 1142.

ment of Genuine Issues' and (b) controverted by declaration or other written evidence filed in opposition to the motion." (emphasis added).

Since all of plaintiff's opposing papers were untimely, the Court will not consider any of plaintiff's opposing material in determining defendant's summary judgment motion. Thus, all material facts as claimed will be assumed to exist without controversy.[29]

4) Local Rules Also Require Opposing Papers to Contain Necessary Documentation

*Local Rule 7.14.2* provides:

Any party who opposes the [summary judgment] motion *shall* serve and file with his opposing papers a separate document containing a concise "Statement of Genuine Issues" setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated.

As a further result of plaintiff's untimely filing, the Court finds that plaintiff has failed to comply with Local Rule 7.14.2.

Finally, the Court observes that despite the untimeliness of plaintiff's filings with the Court, plaintiff deliberately chose to serve defendants by mail. The record indicates that plaintiff's opposing papers were mailed to defendants on Wednesday, September 16th, eight days late[30] in anticipation of a Monday, September 21st hearing.[31] Indeed, as Rule 6(e) of the Federal Rules of Civil Procedure "assumes a three day period for papers delivered through the mail" *United States v. Kasuboski*, 834 F.2d 1345, 1351 (7th Cir.1987), it was generously optimistic for plaintiff to expect defendants' attorney to receive the papers in time to review them for argument.

 The Court stresses that every case involves the rights of three parties: the plaintiff, the defendant, and the Court. True, a plaintiff's rights, particularly in this case where his papers were stricken, may be substantive. However, these rights do not supercede the duty of the Court to protect the rights of all involved parties and to calendar matters for timely adjudication. The Court's own interest is real and is to be evaluated in light of plaintiff's own neglect. As concluded by the First Circuit, "[t]here comes a point when the question arises who is running the court—counsel, or the judge. To this there can be but one answer." *Higuera v. Pueblo Int'l, Inc.*, 585 F.2d 555, 557 (1st Cir.1978).

## II. SUMMARY JUDGMENT APPROPRIATE

### A) *Federal Standard for Summary Judgment*

Summary judgment is appropriate

if the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

Under Fed.R.Civ.P. 56(e), summary judgment may be entered in movant's favor if the adverse party fails to respond. Since the Court has disregarded plaintiff's untimely filings, plaintiff, in essence, has failed to respond to defendant's summary judgment motion. Thus, the instant case contains no factual evidence other than those facts presented by defendants. In particular, the Court assumes that the facts as stated by defendants are uncontroverted, pursuant to Local Rule 7.14.3. However, the Court has also drawn all

---

**29.** *See Pinto v. Universidad de Puerto Rico*, 895 F.2d 18, 19 (1st Cir.1990) ("the court, before deciding, was not obliged to wait indefinitely for plaintiff to respond to the motion, by memorandum or otherwise, and ... [t]he court has no obligation to play nursemaid to indifferent parties").

**30.** The Court's law clerk spoke with Mr. Yagman on Wednesday afternoon, September 16th.

**31.** For defendants to have even viewed the opposing papers, defendants would have had to receive the papers by Friday, September 18, 1992.

inferences in favor of the non-moving party pursuant to Fed.R.Civ.P. 56.

The Court has undertaken an adjudication of the merits of defendant's summary judgment motion. The Court concludes that defendants are entitled to a finding of qualified immunity as a matter of law.

**B)** *Qualified Immunity for Public Officials*

When performing discretionary functions, governmental officials are entitled to qualified immunity unless, in taking the challenged action, they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Because qualified immunity is an "immunity from suit rather than a mere defense to liability," the determination is to be made "at the earliest possible stage in the litigation." *Hunter v. Bryant,* —— U.S. ——, ——, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). Accordingly, at the summary judgment stage, the Court must make "every effort to develop the record to the extent necessary to make the determination at that state". *Act Up!/Portland v. Bagley,* 971 F.2d 298 (9th Cir.1992).

■ When presented with a motion for summary judgment based on qualified immunity, the Court must engage in a three part analysis: 1) the identification of the specific right allegedly violated; 2) the determination of whether that right was so "clearly established" as to alert a reasonable officer to its constitutional parameters; and 3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue. *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991). Thus, officers will prevail if the right asserted by the plaintiff was not "clearly established" or the officer could have reasonably believed his particular conduct was lawful. *Id.*

The Court finds as a matter of law that an officer could have reasonably believed that the LAPD's conduct regarding employment decisions was lawful. Additionally, the Court also notes that plaintiff has failed to identify the universe of clearly established law relied upon in support of his denied promotion claim.

**C)** *Reasonable Officials*

■ Qualified immunity attaches if a reasonable officer could have believed his actions were constitutional even if they were not. *Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989). It is of significance that "[u]nder the *Harlow* standard ... an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ As stated previously, the Court evaluated the record without reference to plaintiff's untimely documents. Defendants declarations and factual evidence support the conclusion that the LAPD labor decisions affecting plaintiff were discretionary decisions made in accordance with LAPD rules and were objectively reasonable under the circumstances. These declarations included declarations from Commander Joseph Germain, Captain Robert Kimball, Chief Daryl Gates, and Officer Patricia Ibarra. Defendants' Statement of Uncontroverted Facts and Conclusions of Law also establish that defendants are entitled to qualified immunity.

Defendants' moving papers and supporting declarations set forth the following facts regarding the department's decision to transfer plaintiff to morning watch. During July of 1991, an LAPD deployment meeting occurred where a discussion concerning Southwest Division Patrol personnel ensued. Officer Patty Ibarra compiled the information relied upon by LAPD officials that would ultimately affect Southwest Division deployment. Captain Kimball reviewed the LAPD's deployment of officers and determined there was an imbalance between the number of Police Officer IIIs in day shift and morning shift.

Accordingly, officers were interviewed and transfer decisions were made, based on the Southwest Division's "change of watch policy." Under this seniority based policy,

fifteen percent of the officers assigned to the change of watch pool would be granted the watch of their choice and could not be "bumped". Also, the officer with the most time on the requested watch would be bumped if that officer had completed six full deployment periods on the requested watch.

Plaintiff Marshall had been on the watch of his choice, "day watch", for eleven deployment periods and was the senior officer eligible to be reassigned to another watch. Plaintiff had also been in the watch of his choice longer than all other officers. Therefore, plaintiff's transfer appears to have been properly based on the LAPD's deployment needs.

The Court finds that the decision to transfer plaintiff was objectively reasonable and was in conformity with existing LAPD policy. Accordingly, the Court concludes that defendants are entitled to qualified immunity for the decision to change the plaintiff's shift and accordingly to summary judgment with respect to that issue.

■ Turning next to plaintiff's claim that a promotion was wrongfully denied, defendants' papers set forth the following facts. In August 1991, an opening for a Police Officer III + 1 position became available in the Southwest Division due to the transfer of a senior officer. The availability of this position was advertised and eleven officers responded, including plaintiff. However, before any interviews of the eleven applicants from the Southwest Division were conducted, another officer was transferred in from another division to fill the position. Specifically, in September 1991, Captain Gascon, the commanding officer of the Southeast Division, and Captain Kimball of the Southwest Division laterally transferred a Police Officer III + 1 from the Southeast Division to fill the position. On September 4, 1991, the position was filled by such a lateral transfer.

Again, it appears that defendants' decision to fill the Police Officer III + 1 position with a person other than plaintiff was proper. There are no facts indicating that the LAPD was precluded from laterally transferring another officer to fill the position.

Further, ten other officers in addition to plaintiff also competitively applied for the position. No authority has been presented to the Court which either guarantees a promotion to every individual who has competitively applied or guarantees a promotion to any person from within a pool of competitive applicants. It would strain plausibility to find that the rights' of ten other officers applying for the position were also violated because they were entitled to a promotion as a matter of right. This rings especially true because another officer already possessing the required rank was transferred into the position.

The Court concludes that summary judgment must be resolved in defendants' favor as an objectively reasonable officer, similarly situated, would have found the actions surrounding the lateral transfer legal. Defendants' decision to fill the available position by lateral transfer is therefore protected by qualified immunity.[32] Thus, because both discretionary decisions made by defendants appear to be objectively reasonable as a matter of law, the defendants are qualifiedly immune from suit as well as liability in this matter.

■ Finally, when qualified immunity is at issue, plaintiff bears the burden of showing that a "fact-specific constitutional right was clearly established." *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984); *Bothke v. Fluor Eng'rs and Constructors, Inc.,* 739 F.2d 484 (9th Cir.1984). A "defendant is presumed to be immune from damages unless the plaintiff shows that the right allegedly violated was clearly established at the time of the conduct at issue." *Elder v. Holloway,* 975 F.2d 1388, 1392 (9th Cir.1992), *citing Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984). Further, the plaintiff's burden includes

---

**32.** In fact, plaintiff was later promoted from a temporary Officer III to a permanent Officer III

on August 11, 1992.

"identifying the universe of relevant statutory and decisional law from which the court can determine whether the right allegedly violated was clearly established." *Elder*, 975 F.2d at 1393.

Because the burden lies with plaintiff to establish as a matter of law that this right was clearly established, "a district court has no obligation to [come up with relevant law on its own] in the case of a claim of qualified immunity." *Id.* at 1396.[33] If plaintiff fails to meet this burden, a district court can properly consider "only the legal facts presented and determine[ ], correctly, that based on those legal facts the plaintiff has not shown that the contours of the right were clear." *Id.* Reversible error will not occur if a district court fails to "fill in the holes." *Id.*

There is no authority before the Court standing for the proposition that a police officer may not be transferred from another division to fill a vacancy or that an officer's rights are infringed under those circumstances. Similarly, there is no authority supporting the proposition that the LAPD is precluded from making employee shift and deployment changes when a determination is made that such changes are necessary.

For the reasons stated herein by the Court, summary judgment is granted in favor of all defendants in this matter against the plaintiff. Let judgment be entered accordingly.

IT IS SO ORDERED.

---

**33.** Further, the Ninth Circuit in *Elder* said "[w]here the plaintiff has the burden of showing that a specific right was clearly established in the law, [and] the court 'gets it wrong' " because plaintiff did not met his burden, the plaintiff has "invited whatever error occurs." *Id.*