Gay v. Cunningham                        CV-95-388-JD   05/05/97
                    UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Francis Gay, Jr.

        v.                              Civil No. 95-388-JD

Michael J. Cunningham,
Warden, et al.


                              O R D E R


        The pro se plaintiff, Francis Gay, Jr., brought this action

seeking declaratory, injunctive, and monetary relief pursuant to

42 U.S.C. § 1983, against Michael J. Cunningham and Mike Sokolow,

the warden and special housing unit manager, respectively, of the

New Hampshire State Prison.  Before the court is the defendants'

motion for summary judgment (document no. 14), to which the

plaintiff has not filed an objection.[1]


                            Background[2]

        On June 19, 1992, the plaintiff was transferred to the New

Hampshire State Prison and subsequently was classified as "C-5."

Like other inmates receiving this classification, the plaintiff

_____

        [1]By procedural order dated January 3, 1997, the court gave
the parties until February 23, 1997, to file motions for summary
judgment, and required responses to such motions to be filed by
March 3, 1997.

        [2]The court recites all undisputed facts in the light most
favorable to the plaintiff.

was assigned to the prison's segregated housing unit ("SHU"). On August 22, 1992, the plaintiff was moved from the "regular" or "I" tier of the SHU to the "N" tier for security reasons stemming from the plaintiff's "special needs."[3] On September 30, 1992, the plaintiff was reclassified as C-5. The plaintiff was housed on N tier until January 1993.

Unlike the I tier, the N tier is only accessible through a set of two doors, the second of which can open only after the first one has been closed. N tier is comprised of four individual cells, each equipped with a barred inner door and a solid outer door, which is closed at all times. While the cells of I tier are equipped with light switches, the cell lights on N tier can only be turned on and off through a control panel controlled by corrections officers. In addition, unlike the cells on I tier, N tier's cells are not equipped with electrical outlets.

While housed on N tier, the plaintiff made requests to defendant Sokolow to use the SHU's satellite law library. The plaintiff eventually received a response from one of the sergeants assigned to the SHU, who told the plaintiff to make his

_____

[3]According to Viola Lunderville, the prison's administrator of security, the plaintiff was transferred to N tier because of "[s]ecurity reasons, repeat offenses for home brew and weapons."

2

requests for individual cases to the law librarian. The plaintiff subsequently complained to defendant Cunningham about his lack of access to the law library. Cunningham referred the plaintiff to a previous conversation between the plaintiff and a Lieutenant Westgate, during which Westgate informed the plaintiff that he could not go to the law library and would have to access legal materials through the inmate attorney. The inmate attorney is not permitted to provide legal assistance to inmates with lawsuits against any local, county, or state employee, or the New Hampshire Department of Corrections.

While housed on N tier, the plaintiff also made requests to defendant Sokolow concerning a job assignment and vocational and educational programming. When Sokolow did not respond to the plaintiff's requests within a week, the plaintiff submitted another request, asking if Sokolow had received the previous requests. Sokolow informed the plaintiff that he "seem[ed] to recall receiving some, [but was] unable to locate them," and asked the plaintiff to resubmit his requests. There is no indication that further action was taken by either party.

On August 11, 1995, the plaintiff filed the complaint in the instant action, alleging that (1) he was denied his liberty without due process of law when prison authorities assigned him to N tier for more than fifteen days without complying with the

3

procedural requirements of <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974); (2) he was denied his liberty without due process of law when his "status and program content were changed without application of any specific criteria," as mandated by New Hampshire Department of Corrections regulations; (3) he was denied his liberty without due process of law when prison authorities placed him on N tier, denied him access to the law library, and neglected to afford him an opportunity to engage in a useful job assignment or participate in vocational and educational programming, all as mandated by the <u>Laaman</u> consent decree; and (4) he was denied his rights under state law to participate in meaningful educational programming.

Discussion

Relying on <u>Sandin v. Conner</u>, 115 S. Ct. 2293, 2300 (1995),[4] the defendants contend that summary judgment is warranted because

---

[4]The Office of the Attorney General, which represents the defendants, has inexplicably chosen to cite to the Lawyer's Edition of the decisions of the United States Supreme Court in providing the page number for relevant legal authority, despite the availability of these decisions in the Supreme Court Reporter or, on other occasions, the United States Reports. This practice is not only incorrect under conventional citation form but hinders the ability of the court and of the opposing party to find the source of the cited material. Counsel will make appropriate citation to Supreme Court precedent in the future in all documents submitted to this court.

the plaintiff's transfer to N tier did not impose "atypical hardship on the inmate in relation to the ordinary incidents of prison life," and thus did not deprive him of a liberty interest. To the extent that the plaintiff's claim is based on his lack of access to the law library, the defendants contend that the plaintiff has failed to allege actual injury, and thus has no standing to bring his claim.

As the First Circuit has explained,

The mere fact that plaintiff failed to file a timely opposition does not mean that [a] defendant's Rule 56 motion should be granted. Whether or not opposed, summary judgment can only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Mendez v. Banco Popular, 900 F.2d 4, 7 (1st Cir. 1990) (citations omitted) (quoting Fed. R. Civ. P. 56(c)).

In the instant case, the defendants have met their summary judgment burden. The court notes at the outset that, to the extent the plaintiff has based his claims on a liberty interest created by the defendants' obligations under the Laaman consent decree, these claims are merely alleged violations of the Laaman decree dressed in due process clothing. As such, they must be brought as an action for contempt of that decree and are not properly before the court. See Fiorentino v. Commissioner, No.

5

96-236-B, slip op. at 8 n.3 (D.N.H. Sept. 27, 1996) (citing Martel v. Fridovich, 14 F.3d 1, 3 n.4 (1st Cir. 1993)).

The plaintiff's claims based on his right to due process stemming from Wolff or on the New Hampshire Department of Correction's own regulations concerning classification fare no better. In Sandin, the Supreme Court held that an inmate suffers no deprivation of a liberty interest, and thus has no constitutional right to due process, unless the restraint to which he is subjected "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 115 S. Ct. at 2300; see also Dominique v. Weld, 73 F.3d 1156, 1159-60 (1st Cir. 1996). The Sandin Court found that an inmate who had been removed from the general population of a Hawaii prison and placed in disciplinary segregation was not exposed to "atypical and significant hardship" where he spent all but fifty minutes of his day inside his cell and, when allowed outside of his cell, remained isolated and constrained by leg irons and wrist chains. See Sandin, 115 S. Ct. at 2305 (Breyer, J., dissenting).

The plaintiff's allegations indicate that his transfer to N tier, as a result of which he faced heightened security, lost control over the lighting in his cell, had no electrical outlets in his room, and lost library privileges, created a less onerous

6

environment than that endured by the plaintiff in <u>Sandin</u>. It follows that the plaintiff was not deprived of a liberty interest as a result of this transfer, and that the plaintiff's procedural due process claims must fail.

Finally, to the extent that the plaintiff has alleged a violation of his right to access to the courts, he has failed to adduce any evidence of actual injury. As the Supreme Court has recently stated, an inmate asserting an access-to-court claim must

> demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

<u>Lewis v. Carey</u>, 116 S. Ct. 2174, 2180 (1996). The plaintiff's allegation in his complaint that his "inability to access the SHU Satellite Law Library impeded his right to pursue a lawsuit against prison officials" is merely a bald assertion. Absent any evidence in the record to support such an allegation, the court will not presume that the plaintiff was hindered in his effort to bring the claims asserted in this or any other lawsuit. Having pointed to the lack of proof on a material element of the

7

plaintiff's claim, the defendants have carried their burden and are entitled to summary judgment on this issue.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).[5]

<u>Conclusion</u>

The defendants' motion for summary judgment (document no. 14) is granted as to plaintiff's claims that are based on federal law.  The court declines to exercise jurisdiction over the plaintiff's claims arising under state law.  <u>See</u> 28 U.S.C.A. § 1367(c)(3) (West 1993).  The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

May 5, 1997

cc:  Francis Gay Jr., pro se
     Daniel J. Mullen, Esquire

_____

[5]The court's conclusion is not intended in any way to condone the prison's policy, as alleged by the plaintiff, with respect to inmates assigned to N tier, i.e., to prevent them from accessing any legal materials related to lawsuits against the prison or prison officials.

8