May 25, 1994 UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

Nos. 93-1932
93-2001

RESOLUTION TRUST CORPORATION,

Plaintiff, Appellee,

v.

NORTH BRIDGE ASSOCIATES, INC., ET AL.,

Defendants, Appellants.

ERRATA SHEET

The order of the court issued on May 2, 1994 is corrected as
follows:

On page 4, line 4, change December 2, 1990 to December 20,
1990.

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

Nos. 93-1932
93-2001

RESOLUTION TRUST CORPORATION,
Plaintiff, Appellee,

v.

NORTH BRIDGE ASSOCIATES, INC., ET AL.,
Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

Peter S. Brooks, with whom Brooks & Lupan was on brief, for

appellants.
Joseph F. Shea, with whom Michael P. Condon, Sheila Kraft

Budoff, Paul R. Gupta and Nutter, McClennen & Fish were on brief,

for appellee.

May 2, 1994

SELYA, Circuit Judge. In one corner, the plaintiff, a
SELYA, Circuit Judge.

government agency, having won by a knockout in the court below,

asserts that this is a case about defendants who demand their own

timetable for pretrial discovery and motion practice. In the

other corner, a group of defendants, having been laid low by what

they claim was a rabbit punch, assert that this is a case about

the government flouting court-imposed deadlines and procedural

rules. After reconstructing the chronology of events, we

conclude that the defendants are substantially correct. We also

conclude that the district court, instead of hurrying to grant

summary judgment, should have held the government accountable for

the lack of punctual discovery and given the government's

litigation adversaries a fair opportunity to formulate their

opposition.

I. THE VIEW FROM RINGSIDE

At the height of a boom market in real estate, two

neophytes, Ralph H. Scott, II, a physician, and his wife, Betty,

decided to build a large, expensive residential subdivision on

the picturesque island of Martha's Vineyard. In order to

proceed, Dr. and Mrs. Scott formed a corporation, North Bridge

Associates, Inc. The Scotts and North Bridge Associates

(collectively, "borrowers" or "appellants") then executed a note

in favor of ComFed Savings Bank ("ComFed" or "the bank") in the

amount of $2,995,000. The borrowers closed the loan on November

25, 1987, securing it by a mortgage on the North Bridge

subdivision. They also executed a construction loan agreement

3

that specified when and how the bank would disburse the borrowed

funds.

The venture experienced several setbacks. A

particularly vexing problem involved abutting property owners who

eventually served a lis pendens asserting that title defects

invalidated easements essential to the subdivision's viability.

At this delicate juncture, the bank shut off the flow of funds

and construction ground to a halt. When the promissory note

matured on November 25, 1988, the borrowers failed to repay the

outstanding balance. In a last-ditch effort to avert

foreclosure, they capitulated to ComFed's demands. As part of

the tribute that ComFed exacted for deferring the repayment

obligation, the borrowers signed an extension agreement and

general release surrendering all potential defenses and

counterclaims.1

The loan remained unpaid at the end of the extension

period. The bank then sued the borrowers in a Massachusetts

state court. The borrowers answered and counterclaimed alleging,

inter alia, that ComFed had broken its promises, violated an

implied covenant of good faith and fair dealing, disregarded

fiduciary responsibilities, and engaged in fraudulent

misrepresentation. They also asked the court to set aside the

1In the extension agreement, the borrowers represented that
"no defenses, offsets, or counterclaims exist to the full payment
of such indebtedness in accordance with its terms." In the
general release, they purposed to discharge ComFed "of and from
any and all debts, demands, action, causes of action, suits,
accounts, covenants, and damages which North Bridge Associates,
Inc. or its officers . . . may have or ever had . . . ."

4

extension agreement and general release on grounds of duress.

Inasmuch as procedural tussles have dominated the

course of this litigation, we deem it prudent to set forth a

detailed chronology of relevant events occurring from and after

the time that the parties joined issue. In doing so, we

eliminate many matters unimportant to our resolution of the

issues on appeal.2

1. December 20, 1990. The borrowers serve
1. December 20, 1990.
interrogatories and a request for document
production. In compliance with applicable
procedural rules, see Fed. R. Civ. P. 34(b),

the request sets a reasonable time and place
for production, specifying that the documents
shall be produced within 30 days at the
offices of the borrowers' lawyers.

2. January 23, 1991. Following ComFed's
2. January 23, 1991.
failure, the Resolution Trust Corporation
("RTC"), having been appointed as conservator
(and soon to be appointed receiver), is
substituted as the party plaintiff and, on
April 1, 1991, removes the action to the
federal district court.

3. April 16, 1991. Over three months after
3. April 16, 1991.

2At the time the borrowers initiated discovery, the state
court had jurisdiction and, accordingly, the borrowers' initial
discovery requests were governed when made by the Massachusetts
Rules of Civil Procedure. The action was soon removed to the
federal district court. See Chronology, infra, at No.2. This

procedural wrinkle has no effect on our ensuing discussion for
two reasons. First, removed cases are governed fully by the
Federal Rules, and are treated no differently than if they had
originated in a federal forum. See Fed. R. Civ. P. 81(c); see

also Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415

U.S. 423, 438 (1974). Second, the state's procedural rules
parallel their federal counterparts in their relevant
particulars. See, e.g., Mass. R. Civ. P. 34(b) (directing that

requests for document production "specify a reasonable time,
place, and manner of making the inspection and performing the
related acts"); Mass. R. Civ. P. 33(a) (allotting 45 days within
which to answer interrogatories). For simplicity's sake, we cite
only to the Federal Rules.

5

the date on which the plaintiff's discovery
responses were due, RTC takes a first,
tentative step toward responding: it offers
to produce the described documents, but
attempts unilaterally to amend the time and
place for production. No documents are
received and nothing is said with respect to
the answers to interrogatories although,
under the Federal Rules, the answers were due
within 30 days of service, see Fed. R. Civ.

P. 33(b)(3).

4. May 26, 1992. After thirteen more months
4. May 26, 1992.
without incident or action of any kind, the
district judge holds a status conference.
RTC agrees to provide all outstanding
discovery "promptly."

5. February 22, 1993. RTC fritters away
5. February 22, 1993.
another nine months. Eventually, the judge
convenes a second status conference. This
time, RTC comes armed with a motion for
partial summary judgment ("the SJM").3 The
judge orders all outstanding discovery
obligations honored by March 24, at the
latest.

6. March 2, 1993. As no progress has been
6. March 2, 1993.
made toward completion of discovery, the
borrowers file the first of three motions for
enlargement of the time within which to
oppose the SJM. The borrowers' motion is
accompanied by an attorney's affidavit
detailing the history of the action and
noting that, more than two years after they
should have been delivered, discovery
materials are still in the pipeline.

7. March 18, 1993. RTC notifies the
7. March 18, 1993.
borrowers that it has gathered some
responsive documents, and suggests that the
parties agree upon a mutually convenient time
to review them.

8. March 25, 1993. Over RTC's objection,
8. March 25, 1993.

3The SJM addressed only count 1 of the complaint and the
borrowers' several counterclaims. The remainder of the
complaint, dealing principally with RTC's effort to reach and
apply assets standing in the name of a related third party
(himself a defendant), remains pending in the district court.

6

the district court grants the borrowers'
motion and extends the time for opposing the
SJM to April 16, 1993.

9. April 2, 1993. The interrogatories are
9. April 2, 1993.
finally answered and, on the same date, the
borrowers' attorneys review the documents
that RTC has made available at its counsel's
offices.

10. April 9, 1993. Some of the documents
10. April 9, 1993.
originally requested on December 2, 1990,
amounting to over 2,000 pages, are at long
last delivered to the offices of the
borrowers' lawyers, Peter and Cathy Brooks
(who are husband and wife). On the same day,
however, the Brooks' infant son is
hospitalized and placed in an intensive care
unit. He remains there, initially, for nine
days, and is readmitted on April 20. Upon
discharge three days later, he continues to
require special attention.

11. April 12, 1993. The borrowers file a
11. April 12, 1993.
motion in which they request a further
enlargement of time until May 14, 1993. This
motion is not accompanied by an affidavit,
but, in an accompanying memorandum, Peter
Brooks (who authored the affidavit in support
of the first extension motion) describes the
medical emergency and informs the court that
the borrowers cannot intelligently address
the SJM until they have time to review the
compendious discovery materials produced only
a few days earlier.

12. May 20, 1993. The borrowers conclude
12. May 20, 1993.
their document review and find the documents
produced to be incomplete and inadequate.
They write to RTC's counsel specifying
seventeen missing categories of documents and
soliciting a conference to reduce areas of
potential controversy.4 The ensuing

4The letter implicates a local rule that provides in
pertinent part:

Before filing any discovery motion, including
any motion for sanctions . . ., counsel for
each of the parties shall confer in good
faith to narrow the areas of disagreement to

7

discussion between the parties engenders no
results.

13. May 24, 1993. The borrowers file their
13. May 24, 1993.
third motion for an extension, accompanied by
an affidavit from Cathy Brooks rehearsing the
latest developments, stating her belief that
the documents withheld exist, and opining
that those papers, if produced, will
illuminate genuine disputes concerning
material facts.

14. June 15, 1993. The borrowers move to
14. June 15, 1993.
compel production of the undisclosed
documents.

15. July 20, 1993. Without giving notice or
15. July 20, 1993.
holding a hearing, the district judge grants
the SJM, rejects the borrowers' second and
third extension motions, and denies the
motion to compel. The court offers no
meaningful explanation for any of its
rulings. In due course, the court invokes
Fed. R. Civ. P. 54(b) and enters judgment.

The borrowers appeal.5 They assert that the lower

court erred: in denying their second and third extension

motions; in taking up the SJM while discovery remained

incomplete, and without prior notice or a hearing; and in

granting the SJM despite the presence of genuine issues of

material fact.

II. THE RULE 56(f) PARADIGM

When a party claims an inability to respond to an

the greatest possible extent. It shall be
the responsibility of counsel for the moving
party to arrange for the conference. . . .

D. Mass. Loc. R. 37.1.

5For technical reasons related primarily to an abortive
effort to secure reconsideration, the borrowers filed two notices
of appeal. We need not distinguish between them.

8

opponent's summary judgment motion because of incomplete

discovery or the like, Fed. R. Civ. P. 56(f) looms large.6 Our

first task, therefore, is to erect the framework under which Rule

56(f) motions must be analyzed. We then proceed to a more

particularized discussion of the borrowers' motions and the

rulings with respect thereto. In performing this analysis, we

remain mindful that a district court's denial of a Rule 56(f)

motion is reviewed only for abuse of discretion. See Licari v.

Ferruzzi, F.3d , (1st Cir. 1994) [No. 93-2047, slip

op. at 16]; Nestor Colon Medina & Sucesores, Inc. v. Custodio,

964 F.2d 32, 38 (1st Cir. 1992).

A. The Applicable Framework.

Fed. R. Civ. P. 56(f) describes a method of buying time

for a party who, when confronted by a summary judgment motion,

can demonstrate an authentic need for, and an entitlement to, an

additional interval in which to marshal facts essential to mount

an opposition. See Paterson-Leitch Co. v. Massachusetts Mun.

Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir. 1988). The rule

6The rule reads:

Should it appear from the affidavits of a
party opposing the motion [for summary
judgment] that the party cannot for reasons
stated present by affidavit facts essential
to justify the party's opposition, the court
may refuse the application for judgment or
may order a continuance to permit affidavits
to be obtained or depositions to be taken or
discovery to be had or may make such other
order as is just.

Fed. R. Civ. P. 56(f).

9

is intended to safeguard against judges swinging the summary

judgment axe too hastily. See Price v. General Motors Corp., 931

F.2d 162, 164 (1st Cir. 1991).

Consistent with the salutary purposes underlying Rule

56(f), district courts should construe motions that invoke the

rule generously, holding parties to the rule's spirit rather than

its letter. See United States v. One Lot of U.S. Currency

($68,000), 927 F.2d 30, 33-34 (1st Cir. 1991); Hebert v.

Wicklund, 744 F.2d 218, 222 (1st Cir. 1984). This does not mean,

however, that Rule 56(f) has no bite or that its prophylaxis

extends to litigants who act lackadaisically; use of the rule not

only requires meeting several benchmarks, see infra, but also

requires due diligence both in pursuing discovery before the

summary judgment initiative surfaces and in pursuing an extension

of time thereafter. In other words, Rule 56(f) is designed to

minister to the vigilant, not to those who slumber upon

perceptible rights. See Paterson-Leitch, 840 F.2d at 989.

Having traced the anatomy of the rule, we next add some

flesh to the bones. A litigant who desires to invoke Rule 56(f)

must make a sufficient proffer. In all events, the proffer

should be authoritative; it should be advanced in a timely

manner; and it should explain why the party is unable currently

to adduce the facts essential to opposing summary judgment. See

id. at 988. When, as is often the case, the reason relates to

incomplete discovery, the party's explanation must take a special

form: it should show good cause for the failure to have

10

discovered the facts sooner; it should set forth a plausible

basis for believing that specified facts, susceptible of

collection within a reasonable time frame, probably exist; and it

should indicate how the emergent facts, if adduced, will

influence the outcome of the pending summary judgment motion.

See id.

In the "delayed discovery" type of case, then, the

criterion for Rule 56(f) relief can be thought of as embodying

five requirements: authoritativeness, timeliness, good cause,

utility, and materiality. We have acknowledged that these

requirements are not inflexible and that district courts are

vested with considerable discretion in their administration. See

id. at 989. In the exercise of that discretion, one or more of

the requirements may be relaxed, or even excused, to address the

exigencies of a given case. When all five requirements are

satisfied, however, a strong presumption arises in favor of

relief. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250

n.5 (1986) (stating that summary judgment will be forestalled if,

and to the extent that, the nonmoving party "has not had the

opportunity to discover information that is essential to his

opposition"). Unless the movant has been dilatory, or the court

reasonably concludes that the motion is a stalling tactic or an

exercise in futility, it should be treated liberally. See 6

Moore's Federal Practice 56.24, at 797-800 (2d ed. 1993).

B. Analysis.

The main battleground between the parties is the

11

borrowers' third, and final, Rule 56(f) motion,7 which rested on

a claim of delayed discovery still outstanding. We proceed to

test this motion in the crucible of Rule 56(f).

1. Authoritativeness. Appellants accompanied their
1. Authoritativeness.

motion with an affidavit executed by Cathy Brooks. Reading the

rule literally and the case law carelessly, RTC asseverates that

the affidavit is defective because it is made by an attorney

rather than a party. This asseveration stems from misreading one

case, Hebert, 744 F.2d at 221 (a case that, contrary to RTC's

rendition of it, stands only for the proposition that an

undocketed letter from a lawyer is not a sufficient Rule 56(f)

proffer), and from ignoring a later case, Paterson-Leitch, 840

F.2d at 988 (a case in which we stated unequivocally that a Rule

56(f) proffer may acceptably take the form of "written

representations of counsel subject to the strictures of Fed. R.

Civ. P. 11").

This case floats comfortably within the safe harbor

contemplated by the Paterson-Leitch court. The affidavit is of

record and has been duly served on the opposing party. It is

signed by a person who possesses firsthand knowledge and who is

competent to address the specifics of the matters discussed. The

7The second extension motion sought a continuance through
May 14, 1993, necessitated by a medical emergency. See

Chronology, supra, at No. 11. While that motion appears to have

been meritorious in the sense that a documented family illness
precluded the borrowers from "presenting facts essential to
justify [their] opposition," Fed. R. Civ. P. 56(f), the district
court did not consider the motion in an expeditious fashion, and
it was effectively superseded by the third motion. Hence, we
train our sights on the latter target.

12

fact that the affiant is also the borrowers' attorney does not

undermine the proffer; after all, the borrowers themselves would

know the relevant particulars only through communications from

counsel. Since they could hardly speak either to the cause or

the effect of discovery delays, requiring that the supporting

affidavit be signed by them rather than by a lawyer would

mindlessly exalt form over substance. Attorney Brooks' affidavit

is, therefore, sufficiently authoritative.

2. Timeliness. RTC questions whether the Rule 56(f)
2. Timeliness.

motion was filed in a timely manner. We answer this query

affirmatively. There is no fixed time limit for filing a Rule

56(f) motion; that is, neither the Federal Rules nor the local

rules place any relevant restriction on the submission of such a

motion, at least when the court has not assigned a firm date for

a hearing on, or adjudication of, the opposing party's summary

judgment initiative.8

In the absence of an applicable time limit, we hold

that a party must invoke Rule 56(f) within a reasonable time

following receipt of a motion for summary judgment. It is, after

all, black letter law that when a rule requires an act to be

done, and does not specify a time for doing it, courts generally

8The only deadline that arguably might apply arises out of
the requirement that affidavits opposing a motion for summary
judgment must be submitted at least one day before the scheduled
hearing on the motion. See Fed. R. Civ. P. 56(c); see also

Ashton-Tate Corp. v. Ross, 916 F.2d 516, 519-20 (9th Cir. 1990)

(discussing interface between Rules 56(c) and 56(f)). But that
proviso has no application where, as here, a motion for summary
judgment is decided on the papers, without oral argument or
notice from the court of a cutoff date.

13

imply an obligation to perform the act within a reasonable

period. Under this rubric, courts regularly have grafted

"reasonable time" requirements onto otherwise silent federal

procedural rules in both the criminal and civil contexts. See,

e.g., Government of Virgin Islands v. Knight, 989 F.2d 619, 627

(3d Cir.) (collecting examples), cert. denied, 114 S. Ct. 556

(1993); Smith v. Bowen, 815 F.2d 1152, 1156 (7th Cir. 1987)

(applying judicially created reasonableness requirement to

determine timeliness of motion to amend judgment under Fed. R.

Civ. P. 54(d)); Brittain v. Stroh Brewery Co., 136 F.R.D. 408,

413 (M.D.N.C. 1991) (same, anent motion for protective order

under Fed. R. Civ. P. 26(c)); Titus v. Smith, 51 F.R.D. 224, 226

(E.D. Pa. 1970) (imposing reasonable time limit on filing of Fed.

R. Civ. P. 55(c) motion to remove entry of default).

Application of the reasonableness principle to this

case is straightforward. Given that the district court delayed

ruling on the first extension motion for several weeks before

allowing it, appellants had reason to wait until near the end of

what would have been the second extension period in the

expectation that the judge would rule momentarily on their second

extension motion. When the judge had not handed down a ruling by

the end of that interval, appellants promptly renewed their

motion, seeking a further extension. In the peculiar

circumstances of this case, we cannot say that the timing of the

14

third extension motion falls outside the realm of

reasonableness.9

3. Good Cause. Although RTC protests that the
3. Good Cause.

borrowers failed to show good cause, the facts belie this

protestation. RTC bases its argument on the faulty premise that

it complied fully with all outstanding discovery demands when it

cavalierly announced, more than three months after discovery

responses initially were due upon the borrowers' terms, that it

would deign to produce documents at a site and time of its

choosing.10 See Chronology, supra, at No. 3. We do not agree

that this ipse dixit was the functional equivalent of full

compliance with outstanding discovery requests.

The rules provide that interrogatories must be answered

within 30 days, see Fed. R. Civ. P. 33(b)(3), and RTC's offer

made no provision whatever for fulfilling that obligation. Of

9The absence of any satisfactory explanation by the judge as
to why the second and third extensions were denied weighs heavily
in our resolution of this issue. And that shortcoming is one of
several factors that distinguish this case from Mendez v. Banco

Popular de Puerto Rico, 900 F.2d 4 (1st Cir. 1990), upon which

RTC pins its hopes. In contrast to the case at bar, Mendez

involved "a district court's reasoned refusal to grant

incremental enlargements of time." Id. at 7 (emphasis supplied).

Furthermore, Mendez did not implicate Rule 56(f) at all; rather,

the case concerned a motion for an enlargement of time under Fed.
R. Civ. P. 6(b). See id. at 6. Finally, Mendez presented the

very different case of an attorney who, unlike the Brookses,
repeatedly asked the court, without any good reason, to
accommodate his personal schedule. See id. at 6-7. A petition

for a continuance is always suspect when it is within the power
of the petitioner to alter the conditions that allegedly preclude
him from acting within the allotted period of time.

10RTC proposed to effect production at the offices of its
law firm and when "mutually convenient."

15

broader significance, the rules give the discovering party, not

the discovery target, the option of specifying the time, place,

and manner of production and inspection. See Fed. R. Civ. P.

34(b). Absent a court order or an agreement among the litigants,

a party from whom discovery is sought cannot unilaterally alter

these directives to suit its fancy. This verity has particular

force where, as here, the discovering party's notice limned an

entirely reasonable time/place/manner format for document

production.

In the final analysis, a movant's claim of good cause

must be viewed against the historical background of the

litigation. Here, RTC's dilatoriness over a three-year span

lends considerable worth to the "goodness" of the borrowers'

"cause." Although discovery was due and owing, RTC did nothing

for three months, then made a token gesture toward compliance,

then hibernated for the next thirteen months, and then, after

representing to the court that it would promptly set matters

straight, twiddled its corporate thumbs for another nine months.

It was only under the hammer of a court order that RTC took

significant, albeit incomplete, steps toward compliance; it

answered the interrogatories on April 2, 1993 (two weeks after

the court-imposed deadline and well over two years after the

answers were originally due) and it simultaneously effected

partial compliance with the request for document production.

This was too little and too late.

In what amounts to an effort at confession and

16

avoidance, RTC labors to shift the focus of our inquiry away from

its chronic disregard of procedural requirements. It says that

appellants contributed to the delay and, at any rate, that they

were lax in enforcing discovery deadlines. We are unimpressed by

this fingerpointing.

In comparison to RTC, the borrowers' contribution to

the litany of delay appears modest. RTC asserts, correctly, that

the borrowers waited two weeks before beginning inspection of the

initial batch of records, and that they then took from April 9 to

May 20 to review the documents delivered to their counsel's

office. On the whole, however, neither interval seems

unreasonable. The former period strikes us as no more than a

routine scheduling glitch and the latter period is largely

excused by the family illness documented in the second

continuance motion (and not disputed by RTC).

RTC's effort to place the blame for two lost years on

appellants' shoulders is disingenuous. When discovery is

appropriately initiated, the burden of compliance lies foremost

with the party from whom the discovery is sought. Of course, the

discovering party has the right to file a motion to compel under

Fed. R. Civ. P. 37, see R.W. Int'l Corp. v. Welch Foods, Inc.,

937 F.2d 11, 15-20 (1st Cir. 1991) (discussing mechanics of

motion practice under Rule 37), but this right is not an

obligation. Rule 37 contains no time limit, and, unless a

particular situation presents special circumstances suggesting

17

that concepts of waiver or estoppel should apply,11 a

discovering party's failure to invoke Rule 37 celeritously will

not excuse the guilty party's failure to furnish required

discovery in a timely manner. RTC's argument to the contrary is

reminiscent of an embezzler who seeks to avoid the consequences

of his defalcation by criticizing the victim as having been

careless with its funds or slow in reporting shortages to the

police.

We will not whip a dead horse. RTC has cited no case

in which a Rule 56(f) motion was denied on the ground that the

movant, having sought discovery expeditiously, then failed to

take heroic measures to enforce his rights against a recalcitrant

opponent. We decline to break new ground and set so odd a

precedent. While there are no model litigants here neither

side has done its utmost to advance the case we think that

under operative norms of litigation practice and the totality of

the extant circumstances, appellants' lassitude in moving to

compel did not excuse RTC's protracted dawdling.

Before leaving this topic, we offer a final

observation. With minor exceptions not relevant here, the

Federal Rules of Civil Procedure apply to the government as well

as to all other litigants. See United States v. Yellow Cab Co.,

11A handful of courts have denied Rule 37 motions as
unreasonably late when brought on the eve of trial or under
similar circumstances. See, e.g., Price v. Maryland Cas. Co.,

561 F.2d 609, 611 (5th Cir. 1977); Lapenna v. Upjohn Co., 110

F.R.D. 15, 18 (E.D. Pa. 1986); see also 4A Moore's Federal

Practice, supra, 37.02[6], at 47-48 (citing cases). These

cases, however, are inapposite.

18

338 U.S. 338, 341 (1949); EEOC v. Waterfront Comm'n of N.Y.

Harbor, 665 F. Supp. 197, 200 (S.D.N.Y. 1987). This tenet has

been endorsed with especial frequency in discovery disputes.

See, e.g., Campbell v. Eastland, 307 F.2d 478, 485 (5th Cir.

1962), cert. denied, 371 U.S. 955 (1963); Barrett v. Hoffman, 521

F. Supp. 307, 315 (S.D.N.Y. 1981) (collecting cases), rev'd on

other grounds, 689 F.2d 324 (2d Cir. 1982), cert. denied, 462

U.S. 1131 (1983). Indeed, because the government is rendered

uniquely powerful by its vast resources and statutory authority,

it has a special responsibility to abide by civil adjudicatory

rules. Here, RTC shirked this responsibility.

4. Utility. We next consider whether appellants
4. Utility.

presented a plausible basis for a belief that discoverable

materials exist that would likely suffice to raise a genuine

issue of material fact and, thus, defeat summary judgment. See

Nestor Colon, 964 F.2d at 38; Price, 931 F.2d at 164. For

purposes of achieving this benchmark, a Rule 56(f) proffer need

not be presented in a form suitable for admission as evidence at

trial, so long as it rises sufficiently above mere speculation.

See Carney v. United States, F.3d , (2d Cir. 1994)

[1994 U.S. App. LEXIS 5449 at *16]. This is as it should be, for

Rule 56(f) is best understood as a complement to other provisions

contained in Rule 56, allowing the opposing party to explain why

he is as of yet unable to file a full-fledged opposition, subject

to the more harrowing evidentiary standard that governs under

19

Rules 56(e) and 56(c).12 See 10A Charles Alan Wright, Arthur

R. Miller & Mary Kay Kane, Federal Practice & Procedure 2740,

at 530-31 (1987 & Supp. 1993).

We think that appellants' proffer passes the test of

utility. In the affidavit accompanying the motion, Cathy Brooks

states, among other things:

When I completed my review of documents that
RTC did produce, I reviewed them with my
client Betty Wells Scott . . . . Based in
part upon her recollection, in part on my own
experience with banks' procedures and record
keeping with respect to construction loans,
and in part on documents obtained through
other sources, I have reason to believe that
RTC has not produced all of the records
requested.

RTC attacks this statement as inherently unreliable.

It draws analogies to two cases in which we discounted Rule 56(f)

proffers for vagueness. See Mattoon v. City of Pittsfield, 980

F.2d 1, 8 (1st Cir. 1992); Peterson-Leitch, 840 F.2d at 989. But

here, the proffer contained more than gauzy generalities; it

specified seventeen categories of materials requested but

withheld.

RTC also draws an analogy to Hebert, 744 F.2d at 220, a

case in which a Rule 56(f) affidavit was rejected partly because

it recounted the affiant's conversations with a third person. In

this case, however, although the Brooks affidavit refers to

12Although Rule 56 sets out stricter standards for materials
offered on the merits of a summary judgment motion, see, e.g.,

Garside v. Osco Drug, Inc., 895 F.2d 46, 49-50 (1st Cir. 1990),

those standards do not apply to proffers under Rule 56(f). See

Carney, supra; see also Committee for First Amendment v.

Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992).

20

conclusions drawn by a third person, the challenged reference

merely provides a partial basis for Brooks' good-faith belief.

Since Rule 56(f) requires a movant to spell out the reasons

underpinning the conclusion that further discovery would be

futile, and since the other bases for Attorney Brooks' belief

fell well within her personal knowledge, we are unprepared to say

that this brief reference spoiled the proffer. Accordingly,

appellants' motion satisfies the utility requirement.

5. Materiality. Conceding nothing, RTC also contests
5. Materiality.

the materiality of the facts that the borrowers wish to discover.

We think that materiality for purposes of Rule 56(f) means

material to the issues raised on summary judgment, and, hence,

the kind of additional discovery that will serve to vivify a Rule

56(f) motion is theoretically different from, and ordinarily will

be more restricted than, the kind of discovery generally

permitted under the Federal Rules. See First Nat'l Bank v.

Cities Serv. Co., 391 U.S. 253, 298 (1968). In short, the facts

that the movant seeks to discover must be foreseeably capable of

breathing life into his claim or defense. See Licari, F.3d

at [slip op. at 16]; Taylor v. Gallagher, 737 F.2d 134, 137

(1st Cir. 1984).

Evaluating the potential significance of unknown facts

in regard to unadjudicated issues is something of a metaphysical

exercise. Consequently, the threshold of materiality at this

stage of a case is necessarily low. Cf., e.g., United States v.

Agurs, 427 U.S. 97, 103 (1976) (explaining that a fact may be

21

material for some purposes as long as there is "any reasonable

likelihood" that it could affect the outcome). Appellants'

proffer crosses that threshold.

It cannot be gainsaid that the issues raised in the

complaint, answer, and counterclaims are complicated. The issues

raised in the SJM mirror this complexity. In an effort to cut

through the legal tangle, we parse the premises on which the SJM

rests and contrast them with appellants' prospective

counterarguments.

RTC insists that appellants' defenses and counterclaims

are entirely barred by reason of (i) the provisions contained in

the extension agreement and general release, see supra note 1,

(ii) the mandate of 12 U.S.C. 1823(e), and/or (iii) the D'Oench

doctrine, see D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942).

The borrowers resist this onslaught by positing (i) that the

extension agreement and general release are products of duress,

and, hence, void (or voidable); and (ii) that claims based on

violations of the plain terms of an agreement that itself

comports with the requisites of section 1823 and the D'Oench

doctrine are not barred.

In respect to this last assertion, the borrowers

maintain that further discovery will prove ComFed violated the

plain terms of the construction loan agreement in that it

disbursed loan proceeds improperly by (i) paying contractors

directly, without authorization, (ii) paying for work never

completed, (iii) paying for substandard work, and (iv) paying for

22

work that deviated from the construction plans. The allegedly

discoverable facts bear directly on the applicability of section

1823(e) and the D'Oench doctrine. They also bear, albeit perhaps

less obviously, on the question of duress (and, hence, on the

enforceability of the extension agreement and general release)

because duress in this type of setting requires proof that the

coercing party caused the financial plight of the coerced party.

See International Underwater Contractors, Inc. v. New England

Tel. & Tel. Co., 393 N.E.2d 968, 970 (Mass. App. Ct. 1979).

We do not believe it is either necessary or desirable

for a court to attempt to probe sophisticated issues on an

undeveloped record. If, at this stage of the proceedings, a lack

of materiality is not apparent, then an inquiring court should

err, if at all, on the side of liberality. See $68,000, 927 F.2d

at 33-34; Paterson-Leitch, 840 F.2d at 988; Hebert, 744 F.2d at

222; see also Slagle v. United States, 228 F.2d 673, 678 (5th

Cir. 1956) (discussing perceived need for courts "to exercise a

spirit of liberality" under Rule 56(f)); 10A, Federal Practice &

Procedure, supra, 2740, at 532; id. 2741, at 550-51. Since

we cannot say that appellants' merits-related arguments are

plainly unmeritorious,13 and since the sought-after discovery

13In a post-argument submission, RTC proclaims that the very
recent case of Capizzi v. FDIC, F. Supp. (D. Mass. 1994)

[No. 90-12775-S] sounds the death knell for the claim of duress.
We do not agree. Capizzi concluded that a lender's threat to

foreclose could not constitute duress because the borrower had
the option of vigorously defending against the foreclosure
action. In this case, it is not clearly established that the
borrowers had such an option, for Mrs. Scott suggests in her
affidavit that she had no knowledge of her potential defenses at

23

pertains closely to the underpinning for those arguments, the

Rule 56(f) motion passes the materiality test.

C. Synthesis.

We have now established, perhaps at greater length than

necessary, that appellants' motion satisfies the strictures of

Rule 56(f). And though we leave open the possibility that a

court may deny even a facially valid Rule 56(f) motion in

appropriate circumstances, the aspects of the situation here

militate strongly in favor of granting a continuance.

In the first place, the facts needed to oppose summary

judgment are in RTC's exclusive control. This is a circumstance

that can assume decretory significance. See Hebert, 744 F.2d at

222 n.4 (suggesting that, once the benchmarks for a valid proffer

are met, "continuances should be routinely granted under Rule

56(f) where the moving party has sole possession of the relevant

facts"). In the second place, the incompleteness of discovery is

RTC's fault. When litigants spar over Rule 56(f), fault packs a

considerable wallop in inscribing the scorecard. See Sames v.

Gable, 732 F.2d 49, 51 (3d Cir. 1984) (explaining that, when

reasonably diligent efforts to obtain evidence from the summary

judgment proponent have been thwarted, continuances "should be

granted almost as a matter of course"); see also International

Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1267 (5th Cir.

the time she signed the extension agreement and general release.
Thus, even assuming that Capizzi is good law of general

applicability a matter on which we take no view it is not
necessarily controlling.

24

1991), cert. denied, 112 S. Ct. 936 (1992). When Rule 56(f)

functions properly, it ensures that, in the mine-run of cases, a

litigant who fails to answer potentially relevant discovery

requests on schedule will be unable to demand summary judgment

until after he remedies his failure. See Bane v. Spencer, 393

F.2d 108, 109 (1st Cir. 1968), cert. denied, 400 U.S. 866 (1970);

see also 10A Federal Practice Procedure, supra, 2741, at n.2

(collecting cases holding that a grant of summary judgment with

discovery outstanding constitutes clear error).

Giving these additional factors due weight, and

considering the record as a whole, we conclude without serious

question that the court below abused its discretion in denying

the borrowers' third Rule 56(f) motion. See United States v.

Roberts, 978 F.2d 17, 21 (1st Cir. 1992) (explaining that a

district court abuses its discretion, inter alia, when it

"commits a palpable error of judgment").

III. CONCLUSION

We need go no further.14 In civil as in criminal

litigation, the government may strike forceful blows, so long as

they are struck within the rules. Here, the government went too

far, frustrating appellants' legitimate discovery initiatives by

14In light of our finding that the court below improvidently
denied a further continuance to the borrowers, we have no
occasion to reach, and express no opinion upon, the remaining
assignments of error. We deem it appropriate to mention,
however, that, contrary to the borrowers' suggestion, this
circuit has approved, in appropriate circumstances, the
adjudication of summary judgment motions on the papers, i.e.,

without oral argument. See, e.g., Cia. Petrolera Caribe, Inc. v.

Arco Caribbean, Inc., 754 F.2d 404, 411 (1st Cir. 1985).

25

playing keepaway. The district court should not have

countenanced, much less rewarded, such dubious conduct.

The order denying relief under Rule 56(f) is reversed,

the judgment below is vacated, and the cause is remanded to the

district court for further proceedings. Costs to appellants.

26