USCA1 Opinion

 

 May 25, 1994 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ Nos. 93-1932 93-2001 RESOLUTION TRUST CORPORATION, Plaintiff, Appellee, v. NORTH BRIDGE ASSOCIATES, INC., ET AL., Defendants, Appellants. _________________________ ERRATA SHEET ERRATA SHEET The order of the court issued on May 2, 1994 is corrected as follows: On page 4, line 4, change December 2, 1990 to December 20, 1990. UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ Nos. 93-1932 93-2001 RESOLUTION TRUST CORPORATION, Plaintiff, Appellee, v. NORTH BRIDGE ASSOCIATES, INC., ET AL., Defendants, Appellants. _________________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _________________________ Peter S. Brooks, with whom Brooks & Lupan was on brief, for _______________ ______________ appellants. Joseph F. Shea, with whom Michael P. Condon, Sheila Kraft _______________ _________________ ____________ Budoff, Paul R. Gupta and Nutter, McClennen & Fish were on brief, ______ _____________ ________________________ for appellee. _________________________ May 2, 1994 _________________________ SELYA, Circuit Judge. In one corner, the plaintiff, a SELYA, Circuit Judge. _____________ government agency, having won by a knockout in the court below, asserts that this is a case about defendants who demand their own timetable for pretrial discovery and motion practice. In the other corner, a group of defendants, having been laid low by what they claim was a rabbit punch, assert that this is a case about the government flouting court-imposed deadlines and procedural rules. After reconstructing the chronology of events, we conclude that the defendants are substantially correct. We also conclude that the district court, instead of hurrying to grant summary judgment, should have held the government accountable for the lack of punctual discovery and given the government's litigation adversaries a fair opportunity to formulate their opposition. I. THE VIEW FROM RINGSIDE I. THE VIEW FROM RINGSIDE At the height of a boom market in real estate, two neophytes, Ralph H. Scott, II, a physician, and his wife, Betty, decided to build a large, expensive residential subdivision on the picturesque island of Martha's Vineyard. In order to proceed, Dr. and Mrs. Scott formed a corporation, North Bridge Associates, Inc. The Scotts and North Bridge Associates (collectively, "borrowers" or "appellants") then executed a note in favor of ComFed Savings Bank ("ComFed" or "the bank") in the amount of $2,995,000. The borrowers closed the loan on November 25, 1987, securing it by a mortgage on the North Bridge subdivision. They also executed a construction loan agreement 3 that specified when and how the bank would disburse the borrowed funds. The venture experienced several setbacks. A particularly vexing problem involved abutting property owners who eventually served a lis pendens asserting that title defects ___ _______ invalidated easements essential to the subdivision's viability. At this delicate juncture, the bank shut off the flow of funds and construction ground to a halt. When the promissory note matured on November 25, 1988, the borrowers failed to repay the outstanding balance. In a last-ditch effort to avert foreclosure, they capitulated to ComFed's demands. As part of the tribute that ComFed exacted for deferring the repayment obligation, the borrowers signed an extension agreement and general release surrendering all potential defenses and counterclaims.1 The loan remained unpaid at the end of the extension period. The bank then sued the borrowers in a Massachusetts state court. The borrowers answered and counterclaimed alleging, inter alia, that ComFed had broken its promises, violated an _____ ____ implied covenant of good faith and fair dealing, disregarded fiduciary responsibilities, and engaged in fraudulent misrepresentation. They also asked the court to set aside the ____________________ 1In the extension agreement, the borrowers represented that "no defenses, offsets, or counterclaims exist to the full payment of such indebtedness in accordance with its terms." In the general release, they purposed to discharge ComFed "of and from any and all debts, demands, action, causes of action, suits, accounts, covenants, and damages which North Bridge Associates, Inc. or its officers . . . may have or ever had . . . ." 4 extension agreement and general release on grounds of duress. Inasmuch as procedural tussles have dominated the course of this litigation, we deem it prudent to set forth a detailed chronology of relevant events occurring from and after the time that the parties joined issue. In doing so, we eliminate many matters unimportant to our resolution of the issues on appeal.2 1. December 20, 1990. The borrowers serve 1. December 20, 1990. interrogatories and a request for document production. In compliance with applicable procedural rules, see Fed. R. Civ. P. 34(b), ___ the request sets a reasonable time and place for production, specifying that the documents shall be produced within 30 days at the offices of the borrowers' lawyers. 2. January 23, 1991. Following ComFed's 2. January 23, 1991. failure, the Resolution Trust Corporation ("RTC"), having been appointed as conservator (and soon to be appointed receiver), is substituted as the party plaintiff and, on April 1, 1991, removes the action to the federal district court. 3. April 16, 1991. Over three months after 3. April 16, 1991. ____________________ 2At the time the borrowers initiated discovery, the state court had jurisdiction and, accordingly, the borrowers' initial discovery requests were governed when made by the Massachusetts Rules of Civil Procedure. The action was soon removed to the federal district court. See Chronology, infra, at No.2. This ___ _____ procedural wrinkle has no effect on our ensuing discussion for two reasons. First, removed cases are governed fully by the Federal Rules, and are treated no differently than if they had originated in a federal forum. See Fed. R. Civ. P. 81(c); see ___ ___ also Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 ____ _________________________ _________________________ U.S. 423, 438 (1974). Second, the state's procedural rules parallel their federal counterparts in their relevant particulars. See, e.g., Mass. R. Civ. P. 34(b) (directing that ___ ____ requests for document production "specify a reasonable time, place, and manner of making the inspection and performing the related acts"); Mass. R. Civ. P. 33(a) (allotting 45 days within which to answer interrogatories). For simplicity's sake, we cite only to the Federal Rules. 5 the date on which the plaintiff's discovery responses were due, RTC takes a first, tentative step toward responding: it offers to produce the described documents, but attempts unilaterally to amend the time and place for production. No documents are received and nothing is said with respect to the answers to interrogatories although, under the Federal Rules, the answers were due within 30 days of service, see Fed. R. Civ. ___ P. 33(b)(3). 4. May 26, 1992. After thirteen more months 4. May 26, 1992. without incident or action of any kind, the district judge holds a status conference. RTC agrees to provide all outstanding discovery "promptly." 5. February 22, 1993. RTC fritters away 5. February 22, 1993. another nine months. Eventually, the judge convenes a second status conference. This time, RTC comes armed with a motion for partial summary judgment ("the SJM").3 The judge orders all outstanding discovery obligations honored by March 24, at the latest. 6. March 2, 1993. As no progress has been 6. March 2, 1993. made toward completion of discovery, the borrowers file the first of three motions for enlargement of the time within which to oppose the SJM. The borrowers' motion is accompanied by an attorney's affidavit detailing the history of the action and noting that, more than two years after they should have been delivered, discovery materials are still in the pipeline. 7. March 18, 1993. RTC notifies the 7. March 18, 1993. borrowers that it has gathered some responsive documents, and suggests that the parties agree upon a mutually convenient time to review them. 8. March 25, 1993. Over RTC's objection, 8. March 25, 1993. ____________________ 3The SJM addressed only count 1 of the complaint and the borrowers' several counterclaims. The remainder of the complaint, dealing principally with RTC's effort to reach and apply assets standing in the name of a related third party (himself a defendant), remains pending in the district court. 6 the district court grants the borrowers' motion and extends the time for opposing the SJM to April 16, 1993. 9. April 2, 1993. The interrogatories are 9. April 2, 1993. finally answered and, on the same date, the borrowers' attorneys review the documents that RTC has made available at its counsel's offices. 10. April 9, 1993. Some of the documents 10. April 9, 1993. originally requested on December 2, 1990, amounting to over 2,000 pages, are at long last delivered to the offices of the borrowers' lawyers, Peter and Cathy Brooks (who are husband and wife). On the same day, however, the Brooks' infant son is hospitalized and placed in an intensive care unit. He remains there, initially, for nine days, and is readmitted on April 20. Upon discharge three days later, he continues to require special attention. 11. April 12, 1993. The borrowers file a 11. April 12, 1993. motion in which they request a further enlargement of time until May 14, 1993. This motion is not accompanied by an affidavit, but, in an accompanying memorandum, Peter Brooks (who authored the affidavit in support of the first extension motion) describes the medical emergency and informs the court that the borrowers cannot intelligently address the SJM until they have time to review the compendious discovery materials produced only a few days earlier. 12. May 20, 1993. The borrowers conclude 12. May 20, 1993. their document review and find the documents produced to be incomplete and inadequate. They write to RTC's counsel specifying seventeen missing categories of documents and soliciting a conference to reduce areas of potential controversy.4 The ensuing ____________________ 4The letter implicates a local rule that provides in pertinent part: Before filing any discovery motion, including any motion for sanctions . . ., counsel for each of the parties shall confer in good faith to narrow the areas of disagreement to 7 discussion between the parties engenders no results. 13. May 24, 1993. The borrowers file their 13. May 24, 1993. third motion for an extension, accompanied by an affidavit from Cathy Brooks rehearsing the latest developments, stating her belief that the documents withheld exist, and opining that those papers, if produced, will illuminate genuine disputes concerning material facts. 14. June 15, 1993. The borrowers move to 14. June 15, 1993. compel production of the undisclosed documents. 15. July 20, 1993. Without giving notice or 15. July 20, 1993. holding a hearing, the district judge grants the SJM, rejects the borrowers' second and third extension motions, and denies the motion to compel. The court offers no meaningful explanation for any of its rulings. In due course, the court invokes Fed. R. Civ. P. 54(b) and enters judgment. The borrowers appeal.5 They assert that the lower court erred: in denying their second and third extension motions; in taking up the SJM while discovery remained incomplete, and without prior notice or a hearing; and in granting the SJM despite the presence of genuine issues of material fact. II. THE RULE 56(f) PARADIGM II. THE RULE 56(f) PARADIGM When a party claims an inability to respond to an ____________________ the greatest possible extent. It shall be the responsibility of counsel for the moving party to arrange for the conference. . . . D. Mass. Loc. R. 37.1. 5For technical reasons related primarily to an abortive effort to secure reconsideration, the borrowers filed two notices of appeal. We need not distinguish between them. 8 opponent's summary judgment motion because of incomplete discovery or the like, Fed. R. Civ. P. 56(f) looms large.6 Our first task, therefore, is to erect the framework under which Rule 56(f) motions must be analyzed. We then proceed to a more particularized discussion of the borrowers' motions and the rulings with respect thereto. In performing this analysis, we remain mindful that a district court's denial of a Rule 56(f) motion is reviewed only for abuse of discretion. See Licari v. ___ ______ Ferruzzi, ___ F.3d ___, ___ (1st Cir. 1994) [No. 93-2047, slip ________ op. at 16]; Nestor Colon Medina & Sucesores, Inc. v. Custodio, _______________________________________ ________ 964 F.2d 32, 38 (1st Cir. 1992). A. The Applicable Framework. A. The Applicable Framework. ________________________ Fed. R. Civ. P. 56(f) describes a method of buying time for a party who, when confronted by a summary judgment motion, can demonstrate an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition. See Paterson-Leitch Co. v. Massachusetts Mun. ___ ____________________ __________________ Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir. 1988). The rule ___________________ ____________________ 6The rule reads: Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. Fed. R. Civ. P. 56(f). 9 is intended to safeguard against judges swinging the summary judgment axe too hastily. See Price v. General Motors Corp., 931 ___ _____ ____________________ F.2d 162, 164 (1st Cir. 1991). Consistent with the salutary purposes underlying Rule 56(f), district courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter. See United States v. One Lot of U.S. Currency ___ ______________ ___________________________ ($68,000), 927 F.2d 30, 33-34 (1st Cir. 1991); Hebert v. _________ ______ Wicklund, 744 F.2d 218, 222 (1st Cir. 1984). This does not mean, ________ however, that Rule 56(f) has no bite or that its prophylaxis extends to litigants who act lackadaisically; use of the rule not only requires meeting several benchmarks, see infra, but also ___ _____ requires due diligence both in pursuing discovery before the summary judgment initiative surfaces and in pursuing an extension of time thereafter. In other words, Rule 56(f) is designed to minister to the vigilant, not to those who slumber upon perceptible rights. See Paterson-Leitch, 840 F.2d at 989. ___ _______________ Having traced the anatomy of the rule, we next add some flesh to the bones. A litigant who desires to invoke Rule 56(f) must make a sufficient proffer. In all events, the proffer should be authoritative; it should be advanced in a timely manner; and it should explain why the party is unable currently to adduce the facts essential to opposing summary judgment. See ___ id. at 988. When, as is often the case, the reason relates to ___ incomplete discovery, the party's explanation must take a special form: it should show good cause for the failure to have 10 discovered the facts sooner; it should set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist; and it should indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion. See id. ___ ___ In the "delayed discovery" type of case, then, the criterion for Rule 56(f) relief can be thought of as embodying five requirements: authoritativeness, timeliness, good cause, utility, and materiality. We have acknowledged that these requirements are not inflexible and that district courts are vested with considerable discretion in their administration. See ___ id. at 989. In the exercise of that discretion, one or more of ___ the requirements may be relaxed, or even excused, to address the exigencies of a given case. When all five requirements are satisfied, however, a strong presumption arises in favor of relief. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 ___ ________ ____________________ n.5 (1986) (stating that summary judgment will be forestalled if, and to the extent that, the nonmoving party "has not had the opportunity to discover information that is essential to his opposition"). Unless the movant has been dilatory, or the court reasonably concludes that the motion is a stalling tactic or an exercise in futility, it should be treated liberally. See 6 ___ Moore's Federal Practice 56.24, at 797-800 (2d ed. 1993). ________________________ B. Analysis. B. Analysis. ________ The main battleground between the parties is the 11 borrowers' third, and final, Rule 56(f) motion,7 which rested on a claim of delayed discovery still outstanding. We proceed to test this motion in the crucible of Rule 56(f). 1. Authoritativeness. Appellants accompanied their 1. Authoritativeness. _________________ motion with an affidavit executed by Cathy Brooks. Reading the rule literally and the case law carelessly, RTC asseverates that the affidavit is defective because it is made by an attorney rather than a party. This asseveration stems from misreading one case, Hebert, 744 F.2d at 221 (a case that, contrary to RTC's ______ rendition of it, stands only for the proposition that an undocketed letter from a lawyer is not a sufficient Rule 56(f) proffer), and from ignoring a later case, Paterson-Leitch, 840 _______________ F.2d at 988 (a case in which we stated unequivocally that a Rule 56(f) proffer may acceptably take the form of "written representations of counsel subject to the strictures of Fed. R. Civ. P. 11"). This case floats comfortably within the safe harbor contemplated by the Paterson-Leitch court. The affidavit is of _______________ record and has been duly served on the opposing party. It is signed by a person who possesses firsthand knowledge and who is competent to address the specifics of the matters discussed. The ____________________ 7The second extension motion sought a continuance through May 14, 1993, necessitated by a medical emergency. See ___ Chronology, supra, at No. 11. While that motion appears to have _____ been meritorious in the sense that a documented family illness precluded the borrowers from "presenting facts essential to justify [their] opposition," Fed. R. Civ. P. 56(f), the district court did not consider the motion in an expeditious fashion, and it was effectively superseded by the third motion. Hence, we train our sights on the latter target. 12 fact that the affiant is also the borrowers' attorney does not undermine the proffer; after all, the borrowers themselves would know the relevant particulars only through communications from counsel. Since they could hardly speak either to the cause or the effect of discovery delays, requiring that the supporting affidavit be signed by them rather than by a lawyer would mindlessly exalt form over substance. Attorney Brooks' affidavit is, therefore, sufficiently authoritative. 2. Timeliness. RTC questions whether the Rule 56(f) 2. Timeliness. __________ motion was filed in a timely manner. We answer this query affirmatively. There is no fixed time limit for filing a Rule 56(f) motion; that is, neither the Federal Rules nor the local rules place any relevant restriction on the submission of such a motion, at least when the court has not assigned a firm date for a hearing on, or adjudication of, the opposing party's summary judgment initiative.8 In the absence of an applicable time limit, we hold that a party must invoke Rule 56(f) within a reasonable time following receipt of a motion for summary judgment. It is, after all, black letter law that when a rule requires an act to be done, and does not specify a time for doing it, courts generally ____________________ 8The only deadline that arguably might apply arises out of the requirement that affidavits opposing a motion for summary judgment must be submitted at least one day before the scheduled hearing on the motion. See Fed. R. Civ. P. 56(c); see also ___ ___ ____ Ashton-Tate Corp. v. Ross, 916 F.2d 516, 519-20 (9th Cir. 1990) _________________ ____ (discussing interface between Rules 56(c) and 56(f)). But that proviso has no application where, as here, a motion for summary judgment is decided on the papers, without oral argument or notice from the court of a cutoff date. 13 imply an obligation to perform the act within a reasonable period. Under this rubric, courts regularly have grafted "reasonable time" requirements onto otherwise silent federal procedural rules in both the criminal and civil contexts. See, ___ e.g., Government of Virgin Islands v. Knight, 989 F.2d 619, 627 ____ _____________________________ ______ (3d Cir.) (collecting examples), cert. denied, 114 S. Ct. 556 _____ ______ (1993); Smith v. Bowen, 815 F.2d 1152, 1156 (7th Cir. 1987) _____ _____ (applying judicially created reasonableness requirement to determine timeliness of motion to amend judgment under Fed. R. Civ. P. 54(d)); Brittain v. Stroh Brewery Co., 136 F.R.D. 408, ________ _________________ 413 (M.D.N.C. 1991) (same, anent motion for protective order under Fed. R. Civ. P. 26(c)); Titus v. Smith, 51 F.R.D. 224, 226 _____ _____ (E.D. Pa. 1970) (imposing reasonable time limit on filing of Fed. R. Civ. P. 55(c) motion to remove entry of default). Application of the reasonableness principle to this case is straightforward. Given that the district court delayed ruling on the first extension motion for several weeks before allowing it, appellants had reason to wait until near the end of what would have been the second extension period in the expectation that the judge would rule momentarily on their second extension motion. When the judge had not handed down a ruling by the end of that interval, appellants promptly renewed their motion, seeking a further extension. In the peculiar circumstances of this case, we cannot say that the timing of the 14 third extension motion falls outside the realm of reasonableness.9 3. Good Cause. Although RTC protests that the 3. Good Cause. ___________ borrowers failed to show good cause, the facts belie this protestation. RTC bases its argument on the faulty premise that it complied fully with all outstanding discovery demands when it cavalierly announced, more than three months after discovery responses initially were due upon the borrowers' terms, that it would deign to produce documents at a site and time of its choosing.10 See Chronology, supra, at No. 3. We do not agree ___ _____ that this ipse dixit was the functional equivalent of full ____ _____ compliance with outstanding discovery requests. The rules provide that interrogatories must be answered within 30 days, see Fed. R. Civ. P. 33(b)(3), and RTC's offer ___ made no provision whatever for fulfilling that obligation. Of ____________________ 9The absence of any satisfactory explanation by the judge as to why the second and third extensions were denied weighs heavily in our resolution of this issue. And that shortcoming is one of several factors that distinguish this case from Mendez v. Banco ______ _____ Popular de Puerto Rico, 900 F.2d 4 (1st Cir. 1990), upon which _______________________ RTC pins its hopes. In contrast to the case at bar, Mendez ______ involved "a district court's reasoned refusal to grant ________ incremental enlargements of time." Id. at 7 (emphasis supplied). ___ Furthermore, Mendez did not implicate Rule 56(f) at all; rather, ______ the case concerned a motion for an enlargement of time under Fed. R. Civ. P. 6(b). See id. at 6. Finally, Mendez presented the ___ ___ ______ very different case of an attorney who, unlike the Brookses, repeatedly asked the court, without any good reason, to accommodate his personal schedule. See id. at 6-7. A petition ___ ___ for a continuance is always suspect when it is within the power of the petitioner to alter the conditions that allegedly preclude him from acting within the allotted period of time. 10RTC proposed to effect production at the offices of its law firm and when "mutually convenient." 15 broader significance, the rules give the discovering party, not the discovery target, the option of specifying the time, place, and manner of production and inspection. See Fed. R. Civ. P. ___ 34(b). Absent a court order or an agreement among the litigants, a party from whom discovery is sought cannot unilaterally alter these directives to suit its fancy. This verity has particular force where, as here, the discovering party's notice limned an entirely reasonable time/place/manner format for document production. In the final analysis, a movant's claim of good cause must be viewed against the historical background of the litigation. Here, RTC's dilatoriness over a three-year span lends considerable worth to the "goodness" of the borrowers' "cause." Although discovery was due and owing, RTC did nothing for three months, then made a token gesture toward compliance, then hibernated for the next thirteen months, and then, after representing to the court that it would promptly set matters straight, twiddled its corporate thumbs for another nine months. It was only under the hammer of a court order that RTC took significant, albeit incomplete, steps toward compliance; it answered the interrogatories on April 2, 1993 (two weeks after the court-imposed deadline and well over two years after the answers were originally due) and it simultaneously effected partial compliance with the request for document production. This was too little and too late. In what amounts to an effort at confession and 16 avoidance, RTC labors to shift the focus of our inquiry away from its chronic disregard of procedural requirements. It says that appellants contributed to the delay and, at any rate, that they were lax in enforcing discovery deadlines. We are unimpressed by this fingerpointing. In comparison to RTC, the borrowers' contribution to the litany of delay appears modest. RTC asserts, correctly, that the borrowers waited two weeks before beginning inspection of the initial batch of records, and that they then took from April 9 to May 20 to review the documents delivered to their counsel's office. On the whole, however, neither interval seems unreasonable. The former period strikes us as no more than a routine scheduling glitch and the latter period is largely excused by the family illness documented in the second continuance motion (and not disputed by RTC). RTC's effort to place the blame for two lost years on appellants' shoulders is disingenuous. When discovery is appropriately initiated, the burden of compliance lies foremost with the party from whom the discovery is sought. Of course, the discovering party has the right to file a motion to compel under Fed. R. Civ. P. 37, see R.W. Int'l Corp. v. Welch Foods, Inc., ___ ________________ _________________ 937 F.2d 11, 15-20 (1st Cir. 1991) (discussing mechanics of motion practice under Rule 37), but this right is not an obligation. Rule 37 contains no time limit, and, unless a particular situation presents special circumstances suggesting 17 that concepts of waiver or estoppel should apply,11 a discovering party's failure to invoke Rule 37 celeritously will not excuse the guilty party's failure to furnish required discovery in a timely manner. RTC's argument to the contrary is reminiscent of an embezzler who seeks to avoid the consequences of his defalcation by criticizing the victim as having been careless with its funds or slow in reporting shortages to the police. We will not whip a dead horse. RTC has cited no case in which a Rule 56(f) motion was denied on the ground that the movant, having sought discovery expeditiously, then failed to take heroic measures to enforce his rights against a recalcitrant opponent. We decline to break new ground and set so odd a precedent. While there are no model litigants here neither side has done its utmost to advance the case we think that under operative norms of litigation practice and the totality of the extant circumstances, appellants' lassitude in moving to compel did not excuse RTC's protracted dawdling. Before leaving this topic, we offer a final observation. With minor exceptions not relevant here, the Federal Rules of Civil Procedure apply to the government as well as to all other litigants. See United States v. Yellow Cab Co., ___ _____________ ______________ ____________________ 11A handful of courts have denied Rule 37 motions as unreasonably late when brought on the eve of trial or under similar circumstances. See, e.g., Price v. Maryland Cas. Co., ___ ____ _____ __________________ 561 F.2d 609, 611 (5th Cir. 1977); Lapenna v. Upjohn Co., 110 _______ __________ F.R.D. 15, 18 (E.D. Pa. 1986); see also 4A Moore's Federal ___ ____ ________________ Practice, supra, 37.02[6], at 47-48 (citing cases). These ________ _____ cases, however, are inapposite. 18 338 U.S. 338, 341 (1949); EEOC v. Waterfront Comm'n of N.Y. ____ __________________________ Harbor, 665 F. Supp. 197, 200 (S.D.N.Y. 1987). This tenet has ______ been endorsed with especial frequency in discovery disputes. See, e.g., Campbell v. Eastland, 307 F.2d 478, 485 (5th Cir. ___ ____ ________ ________ 1962), cert. denied, 371 U.S. 955 (1963); Barrett v. Hoffman, 521 _____ ______ _______ _______ F. Supp. 307, 315 (S.D.N.Y. 1981) (collecting cases), rev'd on ________ other grounds, 689 F.2d 324 (2d Cir. 1982), cert. denied, 462 _____________ _____ ______ U.S. 1131 (1983). Indeed, because the government is rendered uniquely powerful by its vast resources and statutory authority, it has a special responsibility to abide by civil adjudicatory rules. Here, RTC shirked this responsibility. 4. Utility. We next consider whether appellants 4. Utility. _______ presented a plausible basis for a belief that discoverable materials exist that would likely suffice to raise a genuine issue of material fact and, thus, defeat summary judgment. See ___ Nestor Colon, 964 F.2d at 38; Price, 931 F.2d at 164. For ____________ _____ purposes of achieving this benchmark, a Rule 56(f) proffer need not be presented in a form suitable for admission as evidence at trial, so long as it rises sufficiently above mere speculation. See Carney v. United States, ___ F.3d ___, ___ (2d Cir. 1994) ___ ______ _____________ [1994 U.S. App. LEXIS 5449 at *16]. This is as it should be, for Rule 56(f) is best understood as a complement to other provisions contained in Rule 56, allowing the opposing party to explain why he is as of yet unable to file a full-fledged opposition, subject to the more harrowing evidentiary standard that governs under 19 Rules 56(e) and 56(c).12 See 10A Charles Alan Wright, Arthur ___ R. Miller & Mary Kay Kane, Federal Practice & Procedure 2740, _____________________________ at 530-31 (1987 & Supp. 1993). We think that appellants' proffer passes the test of utility. In the affidavit accompanying the motion, Cathy Brooks states, among other things: When I completed my review of documents that RTC did produce, I reviewed them with my client Betty Wells Scott . . . . Based in part upon her recollection, in part on my own experience with banks' procedures and record keeping with respect to construction loans, and in part on documents obtained through other sources, I have reason to believe that RTC has not produced all of the records requested. RTC attacks this statement as inherently unreliable. It draws analogies to two cases in which we discounted Rule 56(f) proffers for vagueness. See Mattoon v. City of Pittsfield, 980 ___ _______ ___________________ F.2d 1, 8 (1st Cir. 1992); Peterson-Leitch, 840 F.2d at 989. But _______________ here, the proffer contained more than gauzy generalities; it specified seventeen categories of materials requested but withheld. RTC also draws an analogy to Hebert, 744 F.2d at 220, a ______ case in which a Rule 56(f) affidavit was rejected partly because it recounted the affiant's conversations with a third person. In this case, however, although the Brooks affidavit refers to ____________________ 12Although Rule 56 sets out stricter standards for materials offered on the merits of a summary judgment motion, see, e.g., ___ ____ Garside v. Osco Drug, Inc., 895 F.2d 46, 49-50 (1st Cir. 1990), _______ _______________ those standards do not apply to proffers under Rule 56(f). See ___ Carney, supra; see also Committee for First Amendment v. ______ _____ ___ ____ ________________________________ Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992). ________ 20 conclusions drawn by a third person, the challenged reference merely provides a partial basis for Brooks' good-faith belief. Since Rule 56(f) requires a movant to spell out the reasons underpinning the conclusion that further discovery would be futile, and since the other bases for Attorney Brooks' belief fell well within her personal knowledge, we are unprepared to say that this brief reference spoiled the proffer. Accordingly, appellants' motion satisfies the utility requirement. 5. Materiality. Conceding nothing, RTC also contests 5. Materiality. ___________ the materiality of the facts that the borrowers wish to discover. We think that materiality for purposes of Rule 56(f) means material to the issues raised on summary judgment, and, hence, the kind of additional discovery that will serve to vivify a Rule 56(f) motion is theoretically different from, and ordinarily will be more restricted than, the kind of discovery generally permitted under the Federal Rules. See First Nat'l Bank v. ___ _________________ Cities Serv. Co., 391 U.S. 253, 298 (1968). In short, the facts _________________ that the movant seeks to discover must be foreseeably capable of breathing life into his claim or defense. See Licari, ___ F.3d ___ ______ at ___ [slip op. at 16]; Taylor v. Gallagher, 737 F.2d 134, 137 ______ _________ (1st Cir. 1984). Evaluating the potential significance of unknown facts in regard to unadjudicated issues is something of a metaphysical exercise. Consequently, the threshold of materiality at this stage of a case is necessarily low. Cf., e.g., United States v. ___ ____ _____________ Agurs, 427 U.S. 97, 103 (1976) (explaining that a fact may be _____ 21 material for some purposes as long as there is "any reasonable likelihood" that it could affect the outcome). Appellants' proffer crosses that threshold. It cannot be gainsaid that the issues raised in the complaint, answer, and counterclaims are complicated. The issues raised in the SJM mirror this complexity. In an effort to cut through the legal tangle, we parse the premises on which the SJM rests and contrast them with appellants' prospective counterarguments. RTC insists that appellants' defenses and counterclaims are entirely barred by reason of (i) the provisions contained in the extension agreement and general release, see supra note 1, ___ _____ (ii) the mandate of 12 U.S.C. 1823(e), and/or (iii) the D'Oench _______ doctrine, see D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942). ___ ____________________ ____ The borrowers resist this onslaught by positing (i) that the extension agreement and general release are products of duress, and, hence, void (or voidable); and (ii) that claims based on violations of the plain terms of an agreement that itself comports with the requisites of section 1823 and the D'Oench _______ doctrine are not barred. In respect to this last assertion, the borrowers maintain that further discovery will prove ComFed violated the plain terms of the construction loan agreement in that it disbursed loan proceeds improperly by (i) paying contractors directly, without authorization, (ii) paying for work never completed, (iii) paying for substandard work, and (iv) paying for 22 work that deviated from the construction plans. The allegedly discoverable facts bear directly on the applicability of section 1823(e) and the D'Oench doctrine. They also bear, albeit perhaps _______ less obviously, on the question of duress (and, hence, on the enforceability of the extension agreement and general release) because duress in this type of setting requires proof that the coercing party caused the financial plight of the coerced party. See International Underwater Contractors, Inc. v. New England ___ ___________________________________________ ____________ Tel. & Tel. Co., 393 N.E.2d 968, 970 (Mass. App. Ct. 1979). _______________ We do not believe it is either necessary or desirable for a court to attempt to probe sophisticated issues on an undeveloped record. If, at this stage of the proceedings, a lack of materiality is not apparent, then an inquiring court should err, if at all, on the side of liberality. See $68,000, 927 F.2d ___ _______ at 33-34; Paterson-Leitch, 840 F.2d at 988; Hebert, 744 F.2d at _______________ ______ 222; see also Slagle v. United States, 228 F.2d 673, 678 (5th ___ ____ ______ _____________ Cir. 1956) (discussing perceived need for courts "to exercise a spirit of liberality" under Rule 56(f)); 10A, Federal Practice & __________________ Procedure, supra, 2740, at 532; id. 2741, at 550-51. Since _________ _____ ___ we cannot say that appellants' merits-related arguments are plainly unmeritorious,13 and since the sought-after discovery ____________________ 13In a post-argument submission, RTC proclaims that the very recent case of Capizzi v. FDIC, ___ F. Supp. ___ (D. Mass. 1994) _______ ____ [No. 90-12775-S] sounds the death knell for the claim of duress. We do not agree. Capizzi concluded that a lender's threat to _______ foreclose could not constitute duress because the borrower had the option of vigorously defending against the foreclosure action. In this case, it is not clearly established that the borrowers had such an option, for Mrs. Scott suggests in her affidavit that she had no knowledge of her potential defenses at 23 pertains closely to the underpinning for those arguments, the Rule 56(f) motion passes the materiality test. C. Synthesis. C. Synthesis. _________ We have now established, perhaps at greater length than necessary, that appellants' motion satisfies the strictures of Rule 56(f). And though we leave open the possibility that a court may deny even a facially valid Rule 56(f) motion in appropriate circumstances, the aspects of the situation here militate strongly in favor of granting a continuance. In the first place, the facts needed to oppose summary judgment are in RTC's exclusive control. This is a circumstance that can assume decretory significance. See Hebert, 744 F.2d at ___ ______ 222 n.4 (suggesting that, once the benchmarks for a valid proffer are met, "continuances should be routinely granted under Rule 56(f) where the moving party has sole possession of the relevant facts"). In the second place, the incompleteness of discovery is RTC's fault. When litigants spar over Rule 56(f), fault packs a considerable wallop in inscribing the scorecard. See Sames v. ___ _____ Gable, 732 F.2d 49, 51 (3d Cir. 1984) (explaining that, when _____ reasonably diligent efforts to obtain evidence from the summary judgment proponent have been thwarted, continuances "should be granted almost as a matter of course"); see also International ___ ____ _____________ Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1267 (5th Cir. _______________ ______________ ____________________ the time she signed the extension agreement and general release. Thus, even assuming that Capizzi is good law of general _______ applicability a matter on which we take no view it is not necessarily controlling. 24 1991), cert. denied, 112 S. Ct. 936 (1992). When Rule 56(f) _____ ______ functions properly, it ensures that, in the mine-run of cases, a litigant who fails to answer potentially relevant discovery requests on schedule will be unable to demand summary judgment until after he remedies his failure. See Bane v. Spencer, 393 ___ ____ _______ F.2d 108, 109 (1st Cir. 1968), cert. denied, 400 U.S. 866 (1970); _____ ______ see also 10A Federal Practice Procedure, supra, 2741, at n.2 ___ ____ ___________________________ _____ (collecting cases holding that a grant of summary judgment with discovery outstanding constitutes clear error). Giving these additional factors due weight, and considering the record as a whole, we conclude without serious question that the court below abused its discretion in denying the borrowers' third Rule 56(f) motion. See United States v. ___ _____________ Roberts, 978 F.2d 17, 21 (1st Cir. 1992) (explaining that a _______ district court abuses its discretion, inter alia, when it _____ ____ "commits a palpable error of judgment"). III. CONCLUSION III. CONCLUSION We need go no further.14 In civil as in criminal litigation, the government may strike forceful blows, so long as they are struck within the rules. Here, the government went too far, frustrating appellants' legitimate discovery initiatives by ____________________ 14In light of our finding that the court below improvidently denied a further continuance to the borrowers, we have no occasion to reach, and express no opinion upon, the remaining assignments of error. We deem it appropriate to mention, however, that, contrary to the borrowers' suggestion, this circuit has approved, in appropriate circumstances, the adjudication of summary judgment motions on the papers, i.e., ____ without oral argument. See, e.g., Cia. Petrolera Caribe, Inc. v. ___ ____ ___________________________ Arco Caribbean, Inc., 754 F.2d 404, 411 (1st Cir. 1985). ____________________ 25 playing keepaway. The district court should not have countenanced, much less rewarded, such dubious conduct. The order denying relief under Rule 56(f) is reversed, _______________________________________________________ the judgment below is vacated, and the cause is remanded to the _________________________________________________________________ district court for further proceedings. Costs to appellants. ______________________________________ ___________________ 26